UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | | |
|---|---|---|
| DR. JAMES JONES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:09-CV-090-C |
| | § | |
| ANGELO STATE UNIVERSITY, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff, Dr. James Jones ("Professor Jones" and/or "Plaintiff"), and files this, his First Amended Complaint against Angelo State University ("Angelo State" and/or "Defendant"), and in support thereof would respectfully show the Court as follows:

## I.
## The Parties

1.1     Plaintiff, Professor Jones, was an individual residing in Tom Green County, Texas, at all relevant times related to this cause of action.

1.2     Defendant, Angelo State, is a public university authorized by and constituting a political subdivision or agency of the State of Texas.  Angelo State is a public corporation authorized by the Texas Constitution and the laws of the State of Texas, which operates as a public university in San Angelo, Tom Green County, Texas.  Angelo State is being sued in its name and own right as the former employer of Professor Jones under Title VII of the Civil Rights Act of 1964, under Chapter 21 of the Texas Labor Code, for constitutional and/or

statutory violations, under the Texas Religious Freedom Restoration Act, for breach of contract, and under the Federal Declaratory Judgment Act.

## II.
## Jurisdiction and Venue

2.1.    This Court has jurisdiction over this matter under federal statutory law, particularly Title VII of the Civil Rights Act of 1964, as amended ("Title VII"),[1] and the Federal Declaratory Judgment Act.[2]

2.2    This Court is vested with original and supplemental jurisdiction over these claims by operation of 28 U.S.C. §§ 1331, 1343, and 1367.

2.3    This Court has in personam jurisdiction over Defendant because it is a governmental entity and a public corporation located in the State of Texas.

2.4    This Court has pendent jurisdiction over the state law claims asserted by Plaintiff herein, including those asserted under the Texas Constitution, Chapter 21 of the Texas Labor Code, and Chapter 110 of the Texas Civil Practice and Remedies Code.

2.5    Venue lies in this judicial district pursuant to 28 U.S.C. § 1404, because the Honorable Sam Sparks transferred the above-styled and numbered cause to this Court from the United States District Court for the Western District of Texas, Austin Division, thus vesting proper venue in this Court.

2.6    Additionally, an actual controversy exists between the parties hereto within the meaning of 28 U.S.C. 2201, and this Court is, therefore, vested with the power in the instant case to declare and adjudicate the legality and/or constitutionality of certain rules and regulations adopted, applied, and/or interpreted by Angelo State.

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] 28 U.S.C. § 2201.

## III.
## <u>Procedural Background</u>

3.1     Plaintiff initially filed suit in the Northern District of Texas, San Angelo Division, alleging that Defendant engaged in religious and/or age discrimination, constitutional and/or statutory violations, and breach of contract, and sought relief under the Federal Declaratory Judgment Act.

3.2     Defendant claimed that because it was the State of Texas, it was not a "person" under 42 U.S.C. § 1983.  Defendant also moved to dismiss a majority of Plaintiff's claims in the original federal court suit, contending that it enjoyed Eleventh Amendment Immunity from such claims.   Accordingly, we dismissed our original federal court suit and filed suit in state court in Travis County, Texas pursuant to state law.

3.3     Before any arguments and/or motions could be heard in the state court suit, Defendant removed the case to the Western District of Texas, Austin Division, based upon the assertion that Federal Question Jurisdiction existed.  Defendant then moved to transfer venue to the Northern District of Texas, San Angelo Division, where Plaintiff had initially filed suit.

3.4     On or about October 14, 2009, Judge Sparks heard motions from all parties regarding remand and transfer of this action, and on or about October 19, 2009, Judge Sparks entered an order denying Plaintiff's motion for remand and granting Defendant's motion for transfer of venue to this Court.   Accordingly, we are now back before this Court for ultimate determination of this cause of action.[3]

---

[3] At the October 14th hearing, Defendant announced in open court that it would not attempt to assert the immunity defense that it raised in the initial federal court suit.

**IV.**
**Factual Background**

4.1     Professor Jones has taught at the university level since 1996.  In the fall of 2005, Professor Jones began teaching at Angelo State, which at that time was a part of the Texas State University System (the "State System").  Professor Jones' official position with Angelo State throughout his employment was that of a tenure track faculty member, with the title of Associate Professor.

4.2     As a member of the Angelo State faculty, Professor Jones taught six different courses in the School of Sciences, developed two core courses and an elective, and assisted students applying to graduate school.  He received overall positive faculty and student evaluations beginning with his first annual review in January 2006 until February 2008.  Professor Jones published 11 papers and/or articles within the first two years, while at Angelo State, and also made numerous presentations at international conferences.  Additionally, Professor Jones actively served on several university committees, participated with three student organizations, and took students to computer programming and robotics competitions.  Overall, Professor Jones was visibly active in a broad spectrum of many extracurricular events at Angelo State.

4.3     Professor Jones is an active evangelical Christian, whose bona fide religious practices and beliefs include identifying himself as an active Christian, sharing his faith with others, and allowing those around him to be aware of his religious beliefs and convictions.  Prohibiting Professor Jones from engaging in reasonable religious practices, in both his personal and professional life, violates his religious beliefs and convictions that define him as a Christian.

4.4     Throughout his employment with Angelo State, it was Professor Jones' custom to describe his professional, educational, and personal background to his new class.  While

describing his personal background, Professor Jones would tell the class about his family, his personal hobbies, and his Christian faith.  In reference to his faith, Professor Jones would state that being a Christian was his most defining quality as a person and would then briefly state what it meant to him to be a Christian.  Professor Jones included this brief statement about his religious faith to help his students understand his religious beliefs in the event of subjective discussions during classroom lectures.  Additionally, because it was a religious practice, introducing himself in such a way was important to Professor Jones in representing himself as a Christian.

4.5     It was also Professor Jones' custom on the last day of class to end with a few parting words of encouragement.  Professor Jones would write the words "richest of fare" on the blackboard and then relate the origin of the words in Isaiah 55:2, which states, "why spend your money on what is not bread, and your labor on what does not satisfy.  Listen, listen to me, and eat what is good, and your soul will delight in the richest of fare."  Professor Jones would then explain his interpretation of the verse, and would go on by wishing his students well in their lives and careers, pointing out that in spite of the difficulties that they may face, people will face tragedies in life, so it is important to make decisions which allow you to experience the best that life has to offer.  Typically, such valedictory remarks would have been appropriate for a professor and/or faculty member to give to his or her students.  Aside from the first day introductions and the parting words on the last day of class, Professor Jones did not mention his religious faith.

4.6     In or around August 2006, Charles McCamant ("McCamant"), then head of the Computer Science Department for Angelo State, confronted Professor Jones about "talking about religion in the classroom."  McCamant told Professor Jones that his comments violated the State

System's Rules and Regulations.   McCamant referenced Chapter V, Rule 4.71 of the State System's Rules and Regulations which states that "[t]he faculty member is entitled to freedom in the classroom in discussing the faculty member's subject but should be judicious in the use of controversial material in the classroom and should introduce such material only as it has clear relationship to the subject field."   Professor Jones informed McCamant that he believed that he had a constitutional right to make the brief comments he made in class.   Professor Jones also requested a written explanation from McCamant stating how the university regulations were violated and what the university was asking him to do about it.

4.7    On or about August 30, 2006, Professor Jones made McCamant aware of his desire for a reasonable accommodation of his bona fide religious beliefs and practices by requesting written clarification of the alleged violation of university rules and what McCamant would like him to do differently, while still preserving his first amendment rights.   Further, Professor Jones advised McCamant of his continued desire to make his limited religious comments.   In response, McCamant informed Professor Jones that he had relayed Professor Jones' statements to Angelo State's Provost, Don Coers ("Provost Coers").   Provost Coers informed McCamant that he would discuss this with the State System's attorney and get back in touch.

4.8    On or about September 13, 2006, in response to a follow-up e-mail from Professor Jones requesting additional clarification regarding how he was violating the State System's Rules and Regulations, McCamant responded that Provost Coers stated that there would not be any written clarification.   McCamant also informed Professor Jones that it was the view of the State System's attorney that Professor Jones was in violation of Rule 4.71 under Chapter V of the State System's Rules and Regulations, and that he would report to Provost

Coers that he had informed Professor Jones of this position.   This refusal and conclusion demonstrates Angelo State's failure to accommodate Professor Jones, as no attempt was made to reach an amicable and/or reasonable resolution to the conflict or to provide Professor Jones with an explanation that would lead to a reasonable accommodation of his religious beliefs and practices.

4.9     On or about October 25, 2006, in an oral conversation, Professor Jones again requested additional clarification from McCamant regarding his supposed violations of the State System's Rules and Regulations regarding his religious comments.   Professor Jones told McCamant that Rule 4.71 under Chapter V of the State System's Rules and Regulations, if taken strictly, would eliminate his constitutional rights.   This conversation was reiterated in an e-mail by McCamant to Provost Coers a few days later.

4.10    On Professor Jones' annual faculty evaluation, dated November 14, 2006, McCamant noted under the heading, "OTHER COMMENTS," as follows: "I have informed Dr. Jones that [he] is in violation of [the State System's Rules and Regulations] regarding some comments that he has made in his classes."   In the dean's performance review of Professor Jones, which was sent to Provost Coers, dated one day later, Thomas A. Bankston, then interim dean of the College of Business, noted that "Dr. McCamant advised him that certain comments reportedly made in class were inappropriate and must be avoided in the future."

4.11    On or about January 31, 2007, Professor Jones applied for the vacant position of Head of the Computer Science Department.   Professor Jones was well-qualified for the vacant position.   Specifically, Professor Jones held the requisite educational degrees, which included an M.B.A. in Information Systems from North Texas State University and a Ph.D. in Computer Science from New Mexico State University.   In addition to his personal education, Professor

Jones had more than ten years experience teaching at the university level.  Also, in 2005 when Professor Jones was first hired, Angelo State asked Professor Jones if he would be interested in becoming the head of the department, and further, Angelo State led Professor Jones to believe that the position was his if he so desired.  However, despite the foregoing, Professor Jones was denied any meaningful consideration for the position when he applied in January 2007.

4.12    The individual ultimately selected for the vacant position of Head of the Computer Science Department, Tim Roden ("Roden"), was younger than Professor Jones and possessed significantly less experience and qualifications compared to Professor Jones, who was 51 at the time.  Moreover, Roden did not even meet the minimal requirements necessary for consideration of the vacant position.  Despite foregoing, Angelo State still awarded Roden the position of Head of the Computer Science Department instead of Professor Jones.  Such conduct demonstrates that Professor Jones' age, in conjunction with his religious beliefs and practices, was a motivating factor in the denial of his consideration for the position of Head of the Computer Science Department.

4.13    In addition to the denial of consideration for the position of Head of the Computer Science Department, Professor Jones was treated differently than similarly situated faculty members in regard to raises, tenure selections, summer teaching assignments, and other special and/or reasonable accommodations.

4.14    From approximately August 2006 until January 2007, McCamant led Professor Jones to believe that several students had complained about Professor Jones' religious comments, and in or around January 2007, McCamant told Professor Jones that he was "walking on very thin ice."  In or around December 2007, Professor Jones requested, received, and reviewed his personnel file, and upon his review of his personnel file, Professor Jones learned

that all the comments and warnings made by McCamant were based solely upon a single informal complaint that was filed on or about August 14, 2006.  Professor Jones is not aware, nor has he ever been made aware, of any other student complaints, whether formal or informal, about the brief religious comments that he made in his classes.  Subsequently, in or around March 2007, without any stated reason or justification, McCamant again warned Professor Jones that his religious comments in class were inappropriate.

4.15    On or about March 24, 2007, then president of Angelo State, James Hindman, sent Professor Jones a letter approving Professor Jones' reappointment for the upcoming 2007-2008 academic year.  Despite this recent approval of his reappointment, on or about August 14, 2007, Professor Jones received a letter from McCamant informing him that the upcoming academic year would be his terminal year.  Then, on or about August 30th, Professor Jones received a letter from Joseph Rallo ("President Rallo"), the new president of Angelo State, informing him that his appointment as a professor would not be renewed after the end of the 2007-2008 academic year.

4.16    In or around September 2007, Professor Jones approached Dean Grady Blount ("Dean Blount"), the new Dean of the College of Sciences for Angelo State, about reversing the decision of non-reappointment letter to Professor Jones.  At first, Dean Blount tried to assist Professor Jones by seeking to have the decision reversed, but after speaking with Provost Coers and reviewing Professor Jones' file, Dean Blount abruptly changed his mind.

4.17    In or around November 2007, Professor Jones approached President Rallo and requested that he reconsider his decision of non-reappointment.  Professor Jones informed President Rallo that it was his belief that the decision not to re-appoint him was based on discriminatory reasons, and provided him with a packet of materials demonstrating his teaching,

research, and service, all criteria for faculty evaluation.   In or around January 2008, President

Rallo overturned the previous decision of non-reappointment.   In a letter from President Rallo to

Professor Jones, dated January 28, 2008, President Rallo stated that there was "no evidence in

your personnel file to support the issuance of a non-appointment letter.   All information in the

file, including the May 24, 2007 letter from then President Hindman, supports your continued

status as a tenure track member of the Department of Computer Science."

      4.18   On or about February 7, 2008, only eight business days following President

Rallo's reinstatement letter, Roden, the new head of the computer science department changed

the student evaluation policy for non-tenured, tenure track computer science faculty.   At the time

of this policy change, Professor Jones was the only non-tenured, tenure track faculty member in

the computer science department and was, therefore, targeted by the sudden policy change.   The

change in department policy required that every class taught by Professor Jones be evaluated

each semester rather than just one section of each course taught during the entire year, which was

the previous policy.   Professors who only have one section of each of their courses evaluated can

choose their most favorable sections for evaluation.   Thus, this option was taken away from

Professor Jones by the new policy change in an attempt to manufacture a pretextual reason

and/or basis for planned adverse employment actions against Professor Jones.

      4.19   On or about February 13, 2008, just twelve business days following President

Rallo's reinstatement letter and six days after the policy change, Roden completed a faculty

review of Professor Jones in which he recommended Professor Jones for non-reappointment.

The reasons given in Roden's faculty review were poor student evaluations and lack of

departmental leadership and cooperation; however, such reasoning constituted a mere pretext for

the actual basis for his recommendation—Professor Jones' religious beliefs and comments.

Interestingly, the reasons stated in Roden's review were not based on new events, despite President Rallo's January 28, 2008 letter stating that there was "no evidence in [Professor Jones'] personnel file to support the issuance of a non-appointment letter."  Such reinstatement evidences that Roden's recommendation was pretextually based on events during fall 2006.

4.20    On or about February 22, 2008, in response to his recent faculty evaluation, Professor Jones wrote a memo to Roden and Dean Blount.  In this memo Professor Jones pointed out his skills and qualifications as an educator.  Additionally, he questioned the validity of the reasoning behind the current recommendation for non-reappointment.  Specifically, Professor Jones referenced the events of fall 2006 and the decision the previous year for non-reappointment and that it was his belief that these issues had been laid to rest; however, that in light of the current recommendation for non-reappointment, that he no longer believed those issues had been settled.

4.21    On or about March 26, 2008, Dean Blount wrote a memo to Provost Coers in which he recommended that Professor Jones receive a letter of non-reappointment.  Again, Dean Blount's stated reasons for this recommendation consisted of student evaluations and events from the fall of 2006, which predates President Rallo's January 28, 2008 letter.  The reasons given by Dean Blount were a mere pretext for the discriminatory adverse employment decision affecting Professor Jones, as set forth above.  Furthermore, other faculty members were recommended for reappointment, despite receiving student evaluations similar to Professor Jones and having less departmental and university-wide experience, as well as less service to the profession when compared to Professor Jones.

4.22    If there were adequate non-discriminatory reasons for the issuance of a letter of non-reappointment, then President Rallo's January 28, 2008 letter would have been blatantly

false, as he stated there was "no evidence in [Professor Jones'] personnel file to support the issuance of a non-appointment letter."  Clearly, there was no evidence in Dr. Jones' personnel file to support non-reappointment, and the reason proffered by Dean Blount constitutes nothing more than a pretextual reason for his recommendation of non-reappointment of Professor Jones.

4.23    On or about June 13, 2008, following a stellar semester of student evaluations, President Rallo issued a letter to Professor Jones stating that the 2008-2009 academic year would be his last and that he would not be reappointed.  Nothing between the date of President Rallo's letter of reinstatement on January 28, 2008 and his letter of non-reappointment on June 13, 2008 constituted an adequate, non-discriminatory reason supporting the decision for the non-reappointment of Professor Jones.

4.24    On or about July 10, 2008, Professor Jones met with President Rallo and requested that he reconsider the non-reappointment decision.  In this meeting, Professor Jones stated his belief that the reason for his non-reappointment was discriminatory in nature. President Rallo did not reverse the decision, and Professor Jones' last day of employment was approximately May 16, 2009.

4.25    On or about December 10, 2008, Professor Jones filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he was prohibited from reappointment for constitutionally impermissible reasons, as Angelo State treated him in a discriminatory manner based upon his religion and age.  Professor Jones received his "right to sue" letter from the EEOC on or about April 26, 2009.  Additionally, Professor Jones received a "right to sue" letter from the Texas Workforce Commission Civil Rights Division on or about June 12, 2009, permitting him to pursue his state law claims under Chapter 21 of the Texas Labor Code.

4.26     At the time of the issuance of the second letter of non-reappointment, Angelo State was no longer governed by the State System's Rules and Regulations; instead, Angelo State was governed by the Texas Tech University System ("Texas Tech System"), in accordance with Texas Tech System's Rules and Regulations.   Those rules and regulations constituted additional terms of Professor Jones' employment contract.   Furthermore, Texas Tech System's Rules and Regulations 04.02.08 provide a procedure for addressing allegations made by non-reappointed faculty members who allege that the non-reappointment decision was made for constitutionally impermissible reasons.

4.27     Texas Tech System's Rules and Regulations set out that upon such an allegation of non-reappointment based on constitutionally impermissible reasons, a faculty committee will consider the allegation, and if probable cause for such an allegation exists, then a hearing panel is to be conducted in accordance with a detailed set of procedural rules.   Accordingly, the Tenure Advisory Committee possessed the responsibility for appointing the faculty committee. Professor Jones specifically alleged discrimination based upon his religious beliefs and practices in his non-reappointment, as well as age discrimination in his denial of promotion; however, a faculty committee was never convened to consider such allegations, as delineated in Texas Tech System's Rules and Regulations, thus, denying Professor Jones redress and due process for his complaints of unfair treatment and unconstitutional termination, resulting in a breach of his employment contract.

**V.**
**Causes of Action**

5.1     ***Alternative Pleadings.***   To the extent necessary, each of the claims set forth below is pleaded in the alternative.

A.    **Count One:**

**Violations of Title VII of the Civil Rights Act of 1964:**
**Discrimination and Retaliation.**

5.2     To the extent necessary, Paragraphs 1.1 through 5.1 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.3     As set forth above, Defendant's actions amount to discrimination and retaliation, and constitute violations under Title VII.   Defendant is prohibited from discriminating against Plaintiff based on his religion under Title VII, and further, Defendant is prohibited from retaliating against Plaintiff because he opposed such discrimination.   Therefore, Defendant has violated Title VII.

5.4     Professor Jones engaged in activity protected under Title VII, namely his religion and/or bona fide religious beliefs, observances, and practices.   As a result of Professor Jones' reference to and identification with his religious beliefs and practices to his students and/or his opposition to religious discrimination, Defendant reprimanded and ultimately decided not to reappoint Professor Jones.   Additionally or alternatively, such conduct by Defendant is an impermissible form of retaliation against Professor Jones because it was based upon Professor Jones' exercise of his rights of free speech and free exercise of religion.   Retaliation of this nature is prohibited by Title VII.

5.5     Rule 4.71 under Chapter V of the State System's Rules and Regulations prohibits the discussion of controversial subjects in class.   Although the policy is facially neutral, Defendant's interpretation and application of the regulation fell more harshly on Professor Jones, as opposed to other professors, as he was disciplined for his religious beliefs, observances, and practices and/or his reasonable exercise thereof.   Such prohibition and discipline cannot be

justified by business necessity, as no need existed for enforcement of the regulation in such a manner against Professor Jones.

5.6     Defendant also treated Professor Jones less favorably than other faculty members because of his religion and/or religious beliefs, observances, and practices.  Defendant treated other faculty members, who did not identify their religious beliefs and practices, more favorably through consideration and award of raises, tenure, summer teaching assignments, and other special and/or reasonable accommodations.

5.7     Defendant failed to reasonably accommodate Professor Jones' religious observances and practices by concluding that Professor Jones was in violation of the State System's Rules and Regulations, and further, by prohibiting him from referencing those beliefs, which assisted his students in understanding his perspective during classroom discussions. Additionally, Defendant failed to respond to repeated requests by Professor Jones for an explanation of Defendant's interpretation of the State System's Rules and Regulations and the conclusion reached thereupon by Defendant.  Ultimately, Defendant neglected to pursue and/or attempt to pursue a compromise or solution to the conflict with Professor Jones, and denied him a reasonable accommodation.

5.8     As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

**B.     Count Two:**

**Violations of Chapter 21 of the Texas Labor Code:**
**Discrimination and Retaliation.**

5.9     To the extent necessary, Paragraphs 1.1 through 5.8 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.10     As set forth above, Defendant's actions amount to discrimination and retaliation, and constitute violations under Chapter 21 of the Texas Labor Code.  Defendant is prohibited from discriminating against Plaintiff based on his religion and/or age under Chapter 21 of the Texas Labor Code, and further, Defendant is prohibited from retaliating against Plaintiff because he opposed such discrimination.  Therefore, Defendant has violated Chapter 21 of the Texas Labor Code.  Additionally or alternatively, such conduct by Defendant is an impermissible form of retaliation against Professor Jones because it was based upon Professor Jones' exercise of his rights of free speech and free exercise of religion.  Retaliation of this nature is prohibited by Chapter 21 of the Texas Labor Code.

5.11     As previously set forth in this Complaint, Professor Jones engaged in activity protected under Chapter 21 of the Texas Labor Code, namely his religion and/or bona fide religious beliefs, observances, and practices.  As a result of Professor Jones' reference to and identification with his religious beliefs and practices to his students and/or his opposition to religious discrimination, Defendant reprimanded and ultimately decided not to reappoint Professor Jones.  Although Rule 4.71 under Chapter V of the State System's Rules and Regulations is facially neutral, Defendant's interpretation and application of the regulation fell more harshly on Professor Jones, as opposed to other professors, as he was disciplined for his religious beliefs, observances, and practices and/or his reasonable exercise thereof.  Such

prohibition and discipline cannot be justified by business necessity, as no need existed for enforcement of the regulation in such a manner against Professor Jones.

5.12    Defendant also treated Professor Jones less favorably than other faculty members because of his religion and/or religious beliefs, observances, and practices.  Defendant treated other faculty members, who did not identify their religious beliefs and practices, more favorably through consideration and award of raises, tenure, summer teaching assignments, and other special and/or reasonable accommodations.  Defendant failed to reasonably accommodate Professor Jones' religious observances and practices by concluding that Professor Jones was in violation of the State System's Rules and Regulations, and further, by prohibiting him from referencing those beliefs, which assisted his students in understanding his perspective during classroom discussions.  Additionally, Defendant failed to respond to repeated requests by Professor Jones for an explanation of Defendant's interpretation of the State System's Rules and Regulations and the conclusion reached thereupon by Defendant.  Ultimately, Defendant neglected to pursue and/or attempt to pursue a compromise or solution to the conflict with Professor Jones, and denied him a reasonable accommodation.

5.13    Under Chapter 21 of the Texas Labor Code, it is unlawful for an employer to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, or to limit its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee because of the employee's age.  As set forth above, Defendant's actions violated Chapter 21 of the Texas Labor Code because age was a motivating factor in adverse employment actions by Defendant.  Additionally or alternatively, Defendant violated Chapter 21 of the Texas Labor Code by discriminating against Professor Jones in denying him adequate consideration for a

promotion, for which he was the most qualified candidate, and by relying on age as a motivating factor for such denial.

5.14    Defendant's conduct in failing to consider him for the position of Head of the Computer Science Department based upon his age adversely affected Professor Jones' employment with Defendant, as he was prohibited from advancing his position and increasing his salary because of discriminatory and unlawful reasons.  Defendant's conduct in failing to consider Professor Jones for the position of Head of the Computer Science Department and their denial of advancing him within the department amounted to discrimination.  Defendant's conduct in selecting a younger and less qualified candidate to fill the vacant position demonstrates its discriminatory intent, conduct which is prohibited and in violation of Chapter 21 of the Texas Labor Code.

5.15    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and his attorneys' fees and costs.

## C.    Count Three:

**Violations of the Texas Religious Freedom Restoration Act,
Texas Civil Practices and Remedies Code, Chapter 110:
Religious Freedom.**

5.16    To the extent necessary, Paragraphs 1.1 through 5.15 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.17     As set forth above, Defendant's actions constitute violations of the Texas Religious Freedom Restoration Act, which prevents Defendant from imposing a substantial burden on the exercise of religion.  Defendant imposed upon Professor Jones' free exercise of religion when they applied the State System's Rules and Regulations to prohibit Professor Jones' from exercising his religious beliefs and practices in the classroom.   Such a policy forced Professor Jones to choose between the benefit of his employment over following his religious beliefs and practices.

5.18     As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded by Chapter 110 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, and his attorneys' fees and costs.

**D.     Count Four:**

**Violations of the Texas Constitution.**

5.19     To the extent necessary, Paragraphs 1.1 through 5.18 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.20     As set forth above, Defendant's actions constitute violations of Sections 3, 3a, 6, 8, and/or 19 of Article I of the Texas Constitution, which affords Professor Jones certain rights. By and through its conduct, Defendant deprived Professor Jones of certain rights afforded to him by the Texas Constitution, including the right to equality, the right to religious freedom, the right to free speech, and/or the right to life, liberty, property, and privileges or immunities, without deprivation except by the due course of the law of the land.

5.21     Defendant deprived Plaintiff of his right to free speech and freedom of religion, as secured by Article I, Sections 6 and 8 of the Texas Constitution.  Plaintiff's constitutional rights were violated when, among other things, Defendant prohibited and/or inhibited him from making protected religious comments in class and retaliated against him based upon such protected comments.  Additionally or alternatively, Defendant violated Plaintiff's right to free speech and/or freedom of religion when Defendant punished and/or retaliated against him when Plaintiff opposed and spoke out against the discriminatory employment practices and actions being taken by Defendant.  Plaintiff spoke out about and complained of religious and age discrimination as to him and religious and age discrimination that was becoming and/or had become the policy, practice, and/or custom at Angelo State and/or that were made, an act of, caused to happen, and/or ratified by policymakers for Defendant, through action and/or inaction.  Defendant violated Plaintiff's right to free speech and/or freedom of religion when Defendant took adverse and/or retaliatory actions against Plaintiff because of Plaintiff's complaints of unlawful discrimination and retaliation, which Plaintiff made internally, as well as externally to the EEOC and outside his general and/or direct chain of command and/or outside the course and scope of his normal duties.  Defendant's conduct constitutes violations of Plaintiff's right to free speech and/or freedom of religion.

5.22     Defendant deprived Plaintiff of his right to procedural due process, as secured by Article I, Section 19 of the Texas Constitution.  Defendant violated Plaintiff's right to procedural due process by depriving Plaintiff of his protected property interest in his employment contracts and agreements with Defendant, without due process and/or due course of law.  Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by diminishing Plaintiff's protected property interest in his employment contracts and agreements with

Defendant, without due process and/or due course of law. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by depriving Plaintiff of his protected liberty interest in his good name and reputation, as well as his ability to pursue his chosen profession, without due process and/or due course of law. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by diminishing Plaintiff's protected liberty interest in his good name and reputation, as well as his ability to pursue his chosen profession, without due process and/or due course of law. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by depriving, diminishing, and/or interfering with Plaintiff's right to free speech, his right to be free from discrimination based on religion and age, and/or his right to be free from retaliation for opposing unlawful discrimination, without due process and/or due course of law.

5.23    Plaintiff was entitled to a hearing and an opportunity for redress of his claims of unlawful discrimination and retaliation, which are provided for by law; however, Defendant failed and/or refused to provide Plaintiff with the minimal procedural due process and/or the procedural redress system incorporated into Defendant's policies, procedures, guidelines, rules, and/or regulations, effectively denying Plaintiff the due process rights to which he was entitled, thus, violating his right to procedural due process guaranteed by the Texas Constitution. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by taking adverse and/or retaliatory employment actions against him, without cause and/or for no other reason than because of unlawful discrimination and/or Plaintiff's opposition to Defendant's unlawful discrimination. Defendant's failure and/or refusal to provide a non-discriminatory cause and/or reasons for taking adverse and/or retaliatory employment actions against Plaintiff, in conjunction with Defendant's failure and/or refusal to offer the proper procedural review of

Plaintiff's allegations, constitute violations of Plaintiff's constitutional right to procedural due process.

5.24    Plaintiff also possesses a claim against Defendant for violation of substantive due process for Defendant's arbitrary, capricious, unreasonable, and/or irrational actions against taken him.   Additionally or alternatively, Plaintiff has been deprived of his protected and fundamental rights without due process of laws in an arbitrary, capricious, unreasonable, and/or irrational manner.

5.25    Defendant's actions and/or conduct further constitute a deprivation of due process, as each and all of the above acts and/or omissions were made in recognition of, as a part of, and/or as a result of the policies, practices, and/or customs of Defendant and were made, an act of, caused to happen, and/or ratified by policymakers for Defendant, through action and/or inaction.  Such actions and/or conduct were non-legislative in nature and deprived Plaintiff of his fundamental rights and/or property and/or liberty interests.  Additionally or alternatively, such actions and/or conduct taken by Defendant against Plaintiff were non-legislative and all were arbitrary, capricious, unreasonable, and/or irrational state action, depriving Plaintiff of his fundamental rights and/or property and/or liberty interests.

5.26    Defendant deprived Plaintiff of his right to equal protection, as secured by Article I, Sections 3 and 3a of the Texas Constitution.  Defendant violated Plaintiff's right to equal protection by failing and/or refusing to provide Plaintiff equal treatment based upon Plaintiff's religion and/or by discriminating against Plaintiff because of his religion and/or the exercise thereof.  Therefore, Defendant deprived and/or diminished Plaintiff's right to equal protection. Additionally or alternatively, Defendant's conduct constituted and/or arose to a pattern of repeated discrimination and/or Defendant's conduct has an opportunity to be repeated against

persons similarly situated to Plaintiff. Defendant's conduct constitutes violations of Plaintiff's right to equal protection.

5.27 As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, and in particular, any and all equitable and/or injunctive relief allowed by law and/or in equity.

**E.    Count Five:**

**Breach of Contract.**

5.28 To the extent necessary, Paragraphs 1.1 through 5.27 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.29 As set forth above, Defendant breached Professor Jones' employment contract and/or agreement by its wrongful termination of Professor Jones and/or by its failure and/or refusal to abide by and/or comply with its own policies, procedures, guidelines, rules, and/or regulations.

5.30 Under Texas Tech System's Rules and Regulations, when an untenured-tenure track faculty member alleges that a decision of non-reappointment is made for constitutionally impermissible reasons, such employee is entitled to preliminary consideration by a faculty committee, followed by a hearing panel.

5.31 As Texas Tech System's Rules and Regulations provide express contractual terms for employment and employment termination and/or non-reappointment, Defendant breached Professor Jones' employment contract by not adhering to the proper procedures designated to apply to specific incidences as alleged herein, thus, wrongfully terminating Professor Jones.

5.32    Defendant also breached Professor Jones' contract of employment by failing to abide by its own policies, procedures, guidelines, rules, and/or regulations, including but not limited to the prohibition of consideration of race, religion, sex, age, national origin, marital status, or physical disabilities in decisions regarding employment.

5.33    As a result of Defendant's breaches, Professor Jones was denied the contractually mandated review process, effectively destroying his contractual rights and terminating his employment and all benefits incorporated or associated with such employment.  Furthermore, Defendant violated its own policies and procedures by using religion and age in the determination to terminate Professor Jones' employment.  Therefore, Defendant denied rights, benefits, and/or remedies contractually afforded to Plaintiff by his contracts and/or agreements, as well as by Defendant's policies, procedures, guidelines, rules, and/or regulations.

5.34    As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded by Chapter 38 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to his damages resulting from said breach by Defendant in an amount to be proven and/or determined at the time of trial, equitable relief, and his attorneys' fees and costs.

**F.     Count Six:**

**Federal Declaratory Judgment Act.**

5.35    To the extent necessary, Paragraphs 1.1 through 5.34 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

5.36    As set forth above, Defendant's use and application of Rule 4.71 under Chapter VI of the State System's Rules and Regulations was overly broad, and in light of constitutional law, should be construed narrowly and therefore declared unconstitutional.

5.37    As such, pursuant to 28 U.S.C. §2201, Professor Jones seeks judgment declaring: (1) that the policy, Rule 4.71 under Chapter V of the State System's Rules and Regulations, is unlawful and unconstitutional as adopted, applied, and/or interpreted by Defendant against Professor Jones and (2) that Defendant violated Professor Jones' constitutional rights, violated and/or breached Professor Jones' employment contracts and/or agreements, violated its own policies, procedures, guidelines, rules, and/or regulations, and/or violated state and/or federal law.

## VI.
## Requested Relief

6.1    As the direct and/or proximate result of the actions of Defendant complained of herein, Plaintiff has suffered, and continues to suffer, from intentional discrimination and/or discriminatory treatment, as well as adverse employment actions and retaliation, which have damaged and caused, and continues to damage and cause, Plaintiff to experience damages, emotional distress, and mental anguish.   Additionally or alternatively, Defendant violated Plaintiff's constitutional rights and/or breached its contract with Plaintiff, as set forth more specifically above.   As such, Plaintiff seeks to recover from Defendant, his actual and/or economic damages occasioned by the wrongful acts of Defendant herein described, in amounts that are within the jurisdictional limits of this Court to be proven and/or determined at the time of trial.

6.2    As to claims under Title VII, Plaintiff herein sues Defendant pursuant to 42 U.S.C. §§ 2000e *et seq*.  All of Defendant's conduct was under color of law.  Accordingly,

Plaintiff seeks recovery of the full measure of relief and damages provided by Title VII against Defendant, including but not necessarily limited to damages for his loss of wages, past and future, the harm to his personal and professional reputation, out-of-pocket losses and/or expenses, emotional pain and suffering, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses in an amount within the jurisdictional limits of this Court to be proven at trial.  Plaintiff also seeks back pay and front pay damages from Defendant in the amount equal to the difference between the wages actually received by Plaintiff and the wages Plaintiff would have received had he not been discriminated against, together with an additional amount as compensatory damages, in addition to reasonable and necessary attorneys' fees and any and all other equitable, injunctive, and compensatory relief which may be available.

6.3     As to claims under Chapter 21 of the Texas Labor Code, Plaintiff herein sues Defendant pursuant to Chapter 21 of the Texas Labor Code, including but not limited to Sections 21.051, 21.055, 21.254, 21.258, 21.2585, and 21.259 of the Texas Labor Code.   All of Defendant's conduct was under color of law.   Accordingly, Plaintiff seeks recovery of the full measure of relief and damages provided by Chapter 21 of the Texas Labor Code against Defendant, including but not necessarily limited to damages for his loss of wages, past and future, the harm to his personal and professional reputation, out-of-pocket losses and/or expenses, emotional pain and suffering, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses in an amount within the jurisdictional limits of this Court to be proven at trial.  Plaintiff also seeks back pay and front pay damages from Defendant in the amount equal to the difference between the wages actually received by Plaintiff and the wages Plaintiff would have received had he not been discriminated against, together with an additional amount as

compensatory damages, in addition to reasonable and necessary attorneys' fees and any and all other equitable, injunctive, and compensatory relief which may be available.

6.4     As to claims for violations of the Texas Religious Freedom Restoration Act, Plaintiff herein sues Defendant pursuant to Chapter 110 of the Texas Civil Practices and Remedies Code.   Accordingly, Plaintiff seeks recovery of any and all remedies afforded by Chapter 106 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to his damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, and his attorneys' fees and costs.

6.5     As to claims for state violations of the Texas Constitution, Plaintiff herein sues Defendant pursuant to the Texas Constitution.   Accordingly, Plaintiff seeks recovery of all equitable and/or injunctive relief which may be available under law and/or in equity, including but not limited to reinstatement.

6.6     As to claims for breach of employment contract, Plaintiff sues Defendant pursuant to Texas law and Chapter 38 of the Texas Civil Practice and Remedies Code.   Because Plaintiff has suffered substantial damages from Defendant's breach, Plaintiff seeks recovery of any and all remedies afforded by Chapter 38 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to compensatory damages, consequential and incidental damages, attorneys' fees, and any and all other equitable and compensatory relief which may be available to and/or recoverable by Plaintiff.

6.7     As to claims under the Federal Declaratory Judgment Act, Plaintiff herein sues Defendant pursuant to 28 U.S.C. §2201, and as such, Plaintiff seeks a judgment declaring: (1) that the policy, Rule 4.71 under Chapter V of the State System's Rules and Regulations, is

unlawful and unconstitutional as adopted, applied, and/or interpreted by Defendant against Professor Jones and (2) that Defendant violated Professor Jones' constitutional rights, violated and/or breached Professor Jones' employment contracts and/or agreements, violated its own policies, procedures, guidelines, rules, and/or regulations, and/or violated state and/or federal law.

6.8     In addition to Plaintiff's damages sought herein, Plaintiff seeks an order from this Court enjoining Defendant from discriminating against its employees based on their age, speech and/or their religious belief, convictions, and/or practices and from retaliating against its employees for opposing unlawful discrimination.   Given the constitutional violations of Defendant, such injunctive relief is available.   Plaintiff has suffered and will suffer irreparable harm if Defendant is not enjoined as requested, and further, Plaintiff is without any other adequate remedy at law.

## VII.
## Fees, Costs, and Interest

7.1     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent him in connection with this matter, and has agreed to pay for such reasonable and necessary services.   In addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover his reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to 42 U.S.C. §2000e-5(k), TEX. LAB. CODE § 21.259, and/or Sections 38.001 and 110.005 of the Texas Civil Practice and Remedies Code.

7.2     Also, pursuant to 42 U.S.C. §2000e-5(k) and the TEX. LAB. CODE § 21.259, Plaintiff seeks to recover any and all expert fees, which he incurs and/or may incur in bringing this suit.

7.3     Additionally, Plaintiff seeks to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VIII.
## Conditions Precedent

8.1     All conditions precedent to the relief being sought by Plaintiff in this Complaint have been performed, have occurred, and/or have been waived.

## IX.
## Demand for Jury Trial

9.1     Pursuant to the Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests trial by jury and will tender the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final hearing, Plaintiff recover judgment against Defendant and be awarded:

(1)     any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically);

(2)     injunctive relief to the extent permitted by law and/or equity;

(3)     equitable relief to the extent permitted by law and/or equity;

(4)     declaratory relief as requested herein;

(5)     his litigation expenses and costs, including but not limited to his reasonable and necessary attorneys' fees and costs and any applicable expert fees;

(6)     pre-judgment and post-judgment interest at the maximum rate permitted by law;

(7)     costs of court; and

(8)     such other and further relief, both general and special, at law and in equity, to which Plaintiff may show himself to be justly entitled.

Respectfully submitted,


 /s/ Frank Hill
Frank Hill                           09632000
Frank Gilstrap                       07964000
Michael Y. Kim                       24039960
Ericha M. Ramsey                     24051952


HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas  76013
(817) 261-2222
(817) 861-4685 Facsimile
fhill@hillgilstrap.com
fgilstrap@hillgilstrap.com
mkim@hillgilstrap.com
eramsey@hillgilstrap.com

ATTORNEYS FOR PLAINTIFF


**CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2010, I electronically filed the foregoing with the clerk

for the U.S. District Court, Northern District of Texas, using the CM/ECF system which will

send notification of such filing to case participants registered for electronic notice, including the

following counsel of record:

    Daniel C. Perkins
    Assistant Attorney General
    Texas Attorney General's Office
    General Litigation Division
    P.O. Box 12548, Capitol Station
    Austin, Texas  78711-2548.


                              /s/ Ericha M. Ramsey
                              Ericha M. Ramsey