## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## SAN ANGELO DIVISION

| | | |
|---|---|---|
| JAMES JONES, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:09-CV-090-C |
| | § | |
| | § | |
| ANGELO STATE UNIVERSITY | § | |
| *Defendants.* | § | |
| | § | |

---

# DEFENDANTS' BRIEF IN SUPPORT OF RULE 56 AND RULE 12(C) MOTIONS FOR SUMMARY JUDGMENT AND/OR JUDGMENT ON THE PLEADINGS

---

GREG ABBOTT
Texas Attorney General

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

**DANIEL C. PERKINS**
Attorney-in-Charge
Texas Bar No. 24010301
Southern District No. 24123
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX
dan.perkins@oag.state.tx.us

JANUARY 28, 2011

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES .................................................................................................. iv

I.  INTRODUCTION ......................................................................................................... 1

II.  SUMMARY OF THE ARGUMENT ............................................................................ 2

III.  STATEMENT OF FACTS ............................................................................................ 3

IV. ARGUMENT AND AUTHORITIES .......................................................................... 4

    A.    Standards of Review .......................................................................................... 4

          1.    Dismissal under Rule 12(c) .................................................................. 4

          2.    Summary judgment standard under Rule 56. ....................................... 4

    B.    The Court Should Dismiss Jones' Texas Constitution Claims  as a Matter of Law because His Pleadings Affirmatively Demonstrate that He has Failed to Articulate Viable Claims under those Theories. ............................................. 5

          1.    Jones has failed to state any proper claim under the Texas Constitution because he has failed to name a proper party. .................................... 5

          2.    To the extent Jones has sued for monetary relief under the Texas Constitution, such relief is not available .............................................. 7

    C.    ASU is Entitled to Summary Judgment on Jones' Claims. ............................... 8

          1.    Jones' Title VII claims are barred because he failed to file his lawsuit within 90 days of the date he received his right-to-sue letter. .............. 8

          2.    Any actionable discrimination and/or retaliation claims are limited by the scope and timing of Jones' EEOC/TWC charge of discrimination. ...... 9

          3.    Jones' claims under Chapter 110 of the Texas Civil Practice and Remedies Code are barred because he failed to provide the required statutory notice and because he failed to file the claim within one year of having actual notice of the alleged substantial burden on his free exercise of religion. ............................................................................................. 11

          4.    Jones' breach of contract claims fail on their merits because there is no evidence of either a valid contract, nor any breach by ASU ................. 14

          5.    Jones cannot make out a prima facie case of discrimination and hostile work environment under Title VII or the Texas Labor Code because he

cannot demonstrate that he was either replaced by someone outside his protected class, treated less favorably than other similarly situated employees outside his protected class, or otherwise discriminated against. ..................................................................................................................18

6.    Even if Jones could make out a prima facie case of discrimination and/or retaliation under Title VII or the Texas Labor Code, his claims still fail because he cannot ultimately prove requisite causation. ....................................................24

7.    Jones' Federal Declaratory Judgment Act claim fails because he has sued the wrong party, has no standing and has requested inappropriate declarations not contemplated by the Act..........................................................................28

V.  CONCLUSION AND PRAYER FOR RELIEF ...................................................................... 31

CERTIFICATE OF SERVICE............................................................................................................ 33

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986) .................................................................4

*Aryain v. Wal-Mart Stores Tex. LP,* 534 F.3d 473 (5th Cir.2008) ..................................................25

*Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937 (2009) ................................................4

*Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739 (1977) ................................................29

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955 (2007) ................................................4

*Berquist v. Wash. Mut. Bank,* 500 F.3d 344  (5th Cir.2007) ................................................19

*Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408 (5th Cir.2007) ................................................19

*Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343 (5th Cir.2001) ................................................22

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ................................................4, 5, 14

*City of Beaumont v. Bouillion,* 896 S.W.2d 143 (Tex.1995) ................................................7

*City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2008) ................................................5, 7

*City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660 (1983) ................................................29

*City of Rockwall v. Hughes,* 246 S.W.3d 621 (Tex.2008) ................................................14

*Clark v. Resistoflex Co.,* 854 F.2d 762 (5th Cir.1988) ................................................9

*Cobb v. Harrington,* 190 S.W.2d 709 (Tex. 1945) ................................................6

*Dao v. Auchan Hypermarket,* 96 F.3d 787 (5th Cir.1996) ................................................8

*Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.,* 416 F.2d 707 (7th Cir.1969) ................................................28

*Doe v. MySpace, Inc.,* 528 F.3d 413 (5th Cir.2008) ................................................4

*Federal Exp. Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147 (2008) ................................................9

*Ferrer v. Chevron Corp.,* 484 F.3d 776 (5th Cir.2007) ................................................4

*Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n,* 274 F.3d 924 (5th Cir.2001) ................................................29

*Forsyth v. Barr,* 19 F.3d 1527 (5th Cir.1994) ................................................21, 22

*Garrett v. Judson Indep. Sch. Dist.,* 299 Fed.Appx. 337 (5th Cir.2008) ................................................24

iv

*Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956 (1969) ........................................................29

*Grey v. Dallas Indep. Sch. Dist.,* 265 Fed.Appx. 342 (5th Cir.2008) ........................................24

*Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 114 S.Ct. 367 (1993) ................................................23

*James v. Sadler,* 909 F.2d 834 (5th Cir. 1990) .................................................................................5

*Janmeja v. Bd. of Supervisors of La. State University and Agricultural and Mechanical College,* 96 Fed.Appx. 212 (5th Cir.2004)...............................................................................................9

*Jones v. Alcoa, Inc.,* 339 F.3d 359 (5th Cir.2003) .......................................................................4

*Lawson v. Callahan,* 111 F.3d 403 (5th Cir.1997).........................................................................29

*Laxton v. Gap, Inc.,* 333 F.3d 572 (5th Cir.2003)...........................................................................25

*Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618, 127 S.Ct. 2162 (2007) .........................11

*Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 550U.S. 618, 127 S.Ct. 2162 (2007) .....................9

*LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383 (5th Cir.2007)........................................20

*Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130 (1992)........................................29

*McCoy v. City of Shreveport,* 492 F.3d 551 (5th Cir.2007) .......................................................19

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973)....................................18

*Murungi v. Xavier Univ. of Louisiana,* 313 Fed.Appx. 686 (5th Cir.2008)...............................24

*Newton v. Securitas Sec. Servs., USA, Inc.,* 250 F. Appx. 18 (5th Cir.2007)..............................11

*Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507 (5th Cir.2001).........................20

*O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669 (1974)..............................................................29

*Pacheco v. Mineta,* 448 F.3d 783 (5th Cir. 2006) .........................................................................8

*Ramsey v. Henderson,* 286 F.3d 264 (5th Cir.2002)......................................................................24

*Reeves v. Sanderson Plumbing,* 530 U.S. 133, 120 S.Ct. 2097 (2000)........................................25

*Russell v. McKinney Hosp. Venture,* 235 F.3d 219 (5th Cir.2000) .............................................18

*Septimus v. Univ. of Houston,* 399 F.3d 601 (5th Cir.2005). .....................................................25

*Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209 (1974).............................................................31

*Stith v. Perot Systems Corp.,* 122 Fed.Appx. 115, 117 (5th Cir.2005) .........................................9

v

*Taylor v. Books A Million, Inc.,* 296 F.3d 376 (5th Cir. 2002) .......................................................8

*Texas Tech Univ. v. Finley,* 223 S.W.3d 510 (Tex.App.—Amarillo 2006, no pet.) ......................9

*Texas v. West Publ'g Co.,* 882 F.2d 171 (5th Cir.1989) ...............................................................29

*University of Texas v. Poindexter,* 306 S.W.3d 798 (Tex.App.—Austin 2009, no pet.)................9

*Valero Mktg. & Supply Co. v. Kalama Int'l,* 51 S.W.3d 345 (Tex.App.—Houston [1st Dist.] 2001, no pet.) ...........................................................................................................................................14

*Waggoner v. City of Garland,* 987 F.2d 1160 (5th Cir.1993) ......................................................21

**Statutes**

28 U.S.C. § 2201 ...........................................................................................................................29

42 U.S.C. § 2000e-2(a)(1)............................................................................................................18

42 U.S.C. § 2000e-5(e) ..................................................................................................................9

42 U.S.C. § 2000e-5(f)(1) ..............................................................................................................9

TEX. CIV. PRAC. & REM. CODE §110.003 ......................................................................................11

TEX. CIV. PRAC. & REM. CODE §110.006(a)...........................................................................12, 13, 14

TEX. CIV. PRAC. & REM. CODE §110.007 ..............................................................................12, 13

TEX. LAB. CODE § 21.202(a) ..........................................................................................................9

**Rules**

FED. R. CIV. P. 56(c) .......................................................................................................................4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

| | | |
|---|---|---|
| JAMES JONES, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:09-CV-090-C |
| | § | |
| ANGELO STATE UNIVERSITY, | § | |
| *Defendant.* | § | |

───────────────────────────────────────────────

**DEFENDANT'S BRIEF IN SUPPORT OF RULE 56 AND RULE 12(C)**
**MOTIONS FOR SUMMARY JUDGMENT AND/OR JUDGMENT ON THE PLEADINGS**

───────────────────────────────────────────────

TO THE HONORABLE SAM CUMMINGS, UNITED STATES DISTRICT JUDGE:

Defendant ANGELO STATE UNIVERSITY ("ASU" or "The University"), hereby files its *Brief in Support of Rule 56 and Rule 12(c) Motions for Summary Judgment and/or Judgment on the Pleadings*, and in support thereof, would show this Court the following:

**I.**
**INTRODUCTION**

Plaintiff James Jones filed this lawsuit against ASU in state district court alleging five claims based on the University's decision to issue him a terminal appointment for the 2008-2009 academic year. Essentially, Jones claims that the decision was premised on: (1) religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended; (2) religious discrimination, age discrimination, and retaliation in violation of Chapter 21 of the Texas Labor Code; (3) religious discrimination in violation of the Texas Religious Freedom Restoration Act codified at Chapter 110 of the Texas Civil Practice and Remedies Code. Further, Jones asserts that ASU: (4) violated his rights under Article 1, Sections 3, 3a, 6, 8, and 19 of the Texas Constitution, and (5) breached his employment contract. Finally, Jones asserts a sixth claim under the Federal Declaratory Judgment Act requesting that the Court enter a variety of declarations. The Defendant denies that it took any actions motivated by discrimination,

retaliation, or any other impermissible means of any kind, denies that the decision violates any of Jones'
rights under the aforementioned statutory and/or constitutional law, and asserts that it had legitimate, non-
discriminatory, non-retaliatory reasons for making the decisions that it made and taking the actions that it
took.  The case has proceeded through discovery and is now ripe for adjudication on dispositive motions.

## II.
## SUMMARY OF THE ARGUMENT

**A.**  **Rule 12(c) Motion for Judgment on the Pleadings**

(1)  **Jones has failed to state any proper claim under the Texas Constitution because
he has failed to name a proper party**.  Such claims may only be brought against a
state official in his official capacity in accordance with Texas Supreme Court
precedent.  Jones has named no state official and thus sues the wrong party.

(2)  **To the extent Jones has sued for monetary relief under the Texas Constitution,
such relief is not available.**  There is no cause of action under Texas law for monetary
damages for alleged constitutional violations in Texas.  Thus, to the extent Jones seeks
monetary redress under the Texas Constitution he has failed to state a claim.

**B.**  **Motion for Summary Judgment**

(1)  **Plaintiff failed to comply with the 90-day statute of limitations necessary to
bring a Title VII lawsuit.**   Jones originally filed this lawsuit in state court on
August 11, 2009, approximately 107 days after he received his right to sue letter
from the EEOC on April 26, 2009, or 103 days after the most generous imputed
receipt date under federal law.

(2)  **Any actionable discrimination and/or retaliation claims are limited by the scope
and timing of Jones' EEOC/TWC charge of discrimination.**  Jones articulates a
number of adverse actions for which he purportedly sues; however, he did not file
his EEOC charge until December 10, 2008.  Thus, he may not reach back beyond
February of 2008 (for his Title VII claims) and June 13, 2008 (for his Chapter 21
Labor Code claims) because any actions before those dates would be beyond the
300-day and 180-day charge-filing limits.

(3)  **Jones' claims under Chapter 110 of the Texas Civil Practice and Remedies
Code are barred because he failed to provide the required statutory notice and
because he failed to file the claim within one year of having actual notice of the
alleged substantial burden on his free exercise of religion.**  Notice is a statutory
prerequisite to a Chapter 110 claim and under Texas law, all statutory preconditions
to suit are mandatory and jurisdictional.  Jones' failure to send notice thus deprives
him of a claim.  Further, Jones did not file suit within one year of the alleged
substantial burden on his free exercise of religion.

(4) **Jones' breach of contract claims fail on their merits because there is no evidence of either a valid contract, nor any breach by ASU.** Jones was employed on a series of 9-month appointments. Each appointment expired by its own terms and Jones was paid according to all terms. Even assuming that the University did not comply with its own rules, there is no damage to Jones that resulted from this "alleged breach" because Jones' "contracts" explicitly provide for no expectations beyond their individual terms.

(5) **Jones cannot make out a prima facie case of discrimination and hostile work environment under Title VII or the Texas Labor Code because he cannot demonstrate that he was either replaced by someone outside his protected class, treated less favorably than other similarly situated employees outside his protected class, or otherwise discriminated against.** Jones identifies no "similarly situated" comparators, nor can he show that he was replaced by someone who is a non-Christian. Further, Jones has no evidence to demonstrate that any adverse action giving rise to his "hostile work environment" was "based on his religion." Finally, Jones cannot allege facts showing sufficiently severe or pervasive conduct that created an objectively hostile environment.

(6) **Even if Jones could make out a prima facie case of discrimination and/or retaliation under Title VII or the Texas Labor Code, his claims still fail because he cannot ultimately prove requisite causation or pretext.** ASU has articulated several legitimate, non-discriminatory reasons for its actions for which Jones can offer no evidence of rebuttal.

(7) **Jones' Federal Declaratory Judgment Act claim fails because he has sued the wrong party, has no standing, and has requested inappropriate declarations not contemplated by the Act.** Jones asks the court to adjudicate the constitutionality of a past harm; however, the DJA requires that he prove a present, continuing harm or some threat of future harm. Because Jones no longer works at ASU, he cannot show that any action by ASU poses a present, continuing harm or a threat of future harm. Further, Jones has failed to name a proper party for his DJA action because he has named no state official who can give effect to any relief awarded by the Court. Finally, Jones has requested several declarations that are not permitted by the DJA because they seek to declare ultimate legal questions that are subsumed by his substantive causes of action in federal and state law.

## III.
## STATEMENT OF FACTS

Included with and attached to this Motion and Brief in Support is Exhibit A, a Statement of Relevant Facts,

which Defendant ASU hereby incorporates by reference to its summary judgment motion and brief in support.

# IV.
## ARGUMENT AND AUTHORITIES

**A.**    **Standards of Review.**

**1.**    **Dismissal under Rule 12(c).**

The pleading standard for a Rule 12(c) motion is the same as for a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.,* 528 F.3d 413, 418 (5th Cir.2008).   Under that standard, the issue is not whether the plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claims. *Ferrer v. Chevron Corp.,* 484 F.3d 776, 780 (5th Cir.2007).   In reviewing a Rule 12(c) motion, the district court must accept well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff; however, the court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*   To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal, ___ U.S. ___,* 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)).   In order for a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged.  *See id.*   Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955.  In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal,* 129 S.Ct. at 1950.  "A statute of limitations may support dismissal under Rule 12(b)(6) [and, concomitantly, Rule 12(c)] where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling...."  *Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir.2003).

**2.**    **Summary judgment standard under Rule 56.**

Summary judgment is mandated if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   The court indulges all reasonable inferences in favor of the

nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2513 (1986).  In order to

determine whether a genuine issue of material fact exists, the issue for the court is "whether a rational trier of

fact could find for the nonmoving party based upon the record evidence before the court."  *James v. Sadler*, 909

F.2d 834, 837 (5th Cir. 1990).  The party seeking summary judgment is not required to produce evidence

showing the absence of a genuine issue of material fact, but can satisfy his burden by pointing out to the court

that there is an absence of evidence to support the nonmoving party's case.  *See Celotex*, 477 U.S. at 325.  Once

the defendant had met his burden, the plaintiff may not rest on unsubstantiated allegations in his pleadings, but

must produce competent, tangible evidence to survive summary judgment.  *Id.*  Based on the above standard,

and for the reasons articulated below, ASU is entitled to summary judgment as a matter of law.

**B.    The Court Should Dismiss Jones' Texas Constitution Claims  as a Matter of Law because His Pleadings Affirmatively Demonstrate that He has Failed to Articulate Viable Claims under those Theories.**

> **1.    Jones has failed to state any proper claim under the Texas Constitution because he has failed to name a proper party.**

Jones has asserted a variety of claims against ASU alleging violations of his rights to free speech,

freedom of religion, equal protection, and due process under the Texas Constitution.  Pl's First Amended

Complaint, ¶¶ 5.19-5.27, pp. 19-23.  However, in *City of El Paso v. Heinrich,* the Texas Supreme Court held

that actions by government officials that violate the Texas Constitution are not considered acts by the state,

and thus a suit for equitable relief to compel the government to comply with the Texas Constitution "*cannot*

*be brought against the state,* which retains immunity, but must be brought against the *state actors in their*

*official capacity.*"  284 S.W.3d 366, 373 (Tex. 2008) (emphases added).

> *Heinrich* involved a claim that governmental action violated a statute.  284 S.W.3d at 369.  The plaintiff

was the widow of a police officer.  *Id.*  Shortly after her husband's death, she began receiving, from a pension

fund, monthly survivor benefits equal to 100% of the monthly pension her husband had earned.  *Id.*  But years

later, the pension fund's board of trustees took the position, based on the fund's bylaws, that the plaintiff should

receive only two-thirds of that monthly payment.  *Id.*

The plaintiff sued the city for which her husband had worked, the pension fund, the fund's board of trustees, and the individual board members (in their official capacities, see id. at 377), alleging that each of those defendants violated a state statute governing the pension fund by reducing her benefits retroactively. *Id.* at 369. She "sought both declaratory relief and an injunction restoring [her] to the status quo from [the] date of the illegal act." *Id.* (internal quotation marks omitted). The defendants filed pleas to the jurisdiction based on governmental immunity (for the defendant entities) and official immunity (for the defendant officials). *Id.* The trial court denied the pleas, the court of appeals affirmed, and the Supreme Court granted the governmental defendants' petition for review "in order to clarify the types of relief that may be sought without legislative consent." *Id.*

The Court began its analysis by identifying the plaintiff's UDJA suit as one complaining of *ultra vires* action—that is, a challenge to a government official's illegal or unauthorized act. *Id.* at 369-70. Such claims, the Court explained, fall within an exception to the general rule of immunity from suit because they seek to make state officials comply with valid statutory or constitutional provisions that leave no room for discretion. *Id.* at 371-73. As the Court succinctly stated, "*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state. Stated another way, these suits do not seek to alter government policy but rather to enforce existing policy." *Id.* at 372.

After laying out the general principles of law governing *ultra vires* suits, id. at 370-72, the Court addressed the proper parties to such suits, id. at 372-73. Acknowledging that it had been "less than clear" on this point in the past, *id.* at 373, the Court reasoned that the nature of *ultra vires* actions dictated that governmental officials are the only proper defendants to such suits:

> [B]ecause the rule that *ultra vires* suits are not "suit[s] against the State within the rule of immunity of the State from suit" derives from the premise that the "acts of officials which are not lawfully authorized are not acts of the State," *Cobb* [*v. Harrington*]*,* 190 S.W.2d [709, 712 (Tex. 1945)], it follows that these suits cannot be brought against the state, which retains immunity, but must be brought against the state actors in their official capacity. This is true even though the suit is, for all practical purposes, against the state.

*Id.* (footnote omitted).  The Court thus established a simple rule that applies whenever a plaintiff alleges that the government has acted outside of its statutory or constitutional authority:  such a suit may proceed only against a governmental official in his or her official capacity; it may not proceed against a governmental entity.  *Id.*; *see also id.* at 369, 371, 372, 374 (applying this *ultra vires* framework to both statutory and constitutional violations).  Implementing this rule, the Court dismissed the plaintiff's claims against all the governmental entities named as defendants: the city, the pension fund, and the fund's board of trustees.  *Id.* at 377 & n.10, 380.  But the Court held that the plaintiff's claims for prospective declaratory and injunctive relief against the city's mayor and the fund's board members in their official capacities could go forward.  *Id.* at 380.

Here, Jones's suit violates the very tenets that *Heinrich* espouses.  Jones, like the *Heinrich* plaintiff, has brought his equitable claims against a government entity; yet, his true complaint is that certain officials at ASU have acted outside the bounds of their government roles because the government lacks authority to harm its citizens by violating their constitutional rights.  *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148-49 (Tex.1995).  Thus, the actions about which Jones complains are not state action, but *ultra vires* acts, which *Heinrich* instructs can only be remedied by suits for equitable relief against the offending official himself.  284 S.W.3d 366, 373.  Unlike the *Heinrich* plaintiff, however, Jones has sued no state officials.  Because his only claims under the Texas Constitution simply are not authorized according to the *Heinrich* opinion, the Court should dismiss those claims for failure to state a claim upon which the Court may grant relief.[1]

> **2.  To the extent Jones has sued for monetary relief under the Texas Constitution, such relief is not available.**

Although Jones does not appear to be requesting monetary damages in his claims under the Texas Constitution, his pleadings are less than crystal clear.  To the extent he is making those claims, however, ASU would draw the Court's attention to long-standing precedent in Texas holding that claims for damages under the Texas Constitution are not permitted against state agencies.  *Bouillion,* 896 S.W.2d at 150.  Accordingly, to the extent Jones

---

[1] The Court need not be concerned about leaving Jones without a remedy.  The Court may take judicial notice of the fact that pending before the Court is a second lawsuit filed by Jones against McCamant and Coers, in which Jones reiterates these claims against those defendants in their official capacities.  For the purposes of *this* suit, however, Jones' Texas Constitution claims are clearly barred by *Heinrich*.

sues ASU for damages under the Texas Constitution, the pleadings affirmative demonstrate that no such claims exist under Texas law.  Accordingly, the Court should grant ASU's Rule 12(c) motion as to those claims.

**C.     ASU is Entitled to Summary Judgment on Jones' Claims.**

   **1.     Jones' Title VII claims are barred because he failed to file his lawsuit within 90 days of the date he received his right-to-sue letter.**

   A Title VII plaintiff must exhaust his administrative remedies before filing suit in federal court.  *See Pacheco v. Mineta,* 448 F.3d 783, 788 & n. 7 (5th Cir. 2006).  The receipt of a right to sue notice exhausts administrative remedies as required by law.  *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-89 (5th Cir.1996).  Title VII requires claimants to file suit within 90 days after receipt of the statutory notice. 42 U.S.C. § 2000e-5(f)(1).  The 90-day window is strictly construed and a precondition to filing suit in district court akin to a statute of limitations.  *Duron v. Albertson's LLC,* 560 F.3d 288, 290 (5th Cir.2009) (internal citations omitted).  If the plaintiff fails to allege the specific date that he actually received the notice and the date the letter was received is unknown, a presumption of receipt is appropriate.  *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 379 (5th Cir.2002) (describing 7 days as the "most generous" presumption to determine the date of receipt).

   Here, the evidence demonstrates that Jones's EEOC right-to-sue letter is dated April 23, 2009.  Appx. at 608  Jones attested, in deposition and in answers to interrogatories, that he received the letter on April 26, 2009, or at the very latest "not much later."  Appx. at 60; Appx. at 565; Appx. at 587.  Giving Jones the benefit of the *Taylor* court's 7-day presumption, at the latest, Jones is presumed to have received his right-to-sue letter by April 30, 2009.  *See Taylor,* 296 at 379.  However, Jones filed this lawsuit in the 419 District Court in Travis County on August 11, 2009, approximately 103 days after April 30, 2009 – the latest date he can be presumed to have received his right-to-sue letter.  Accordingly, Jones has failed to comply with Title VII's statute of limitations requirement that he bring the lawsuit within 90 days of receiving his right-to-sue letter.  For that reason, the Court should grant summary judgment to ASU on all claims premised on Title VII.

**2.** **Any actionable discrimination and/or retaliation claims are limited by the scope and timing of Jones' EEOC/TWC charge of discrimination.**

Before an aggrieved employee may sue his employer for discrimination, both state and federal law require that the employee file a "charge of discrimination" with the appropriate agency. In the state of Texas an employee must file his charge with the Texas Workforce Commission within 180 days of the alleged discriminatory conduct (if asserting a claim under state anti-discrimination law), and/or with the EEOC within 300 days of the alleged discriminatory conduct (if asserting a claim under federal anti-discrimination law). *See* TEX. LAB. CODE § 21.202(a) (West 2010); *see also* 42 U.S.C. § 2000e-5(e); *University of Texas v. Poindexter,* 306 S.W.3d 798, 807 (Tex.App.—Austin 2009, no pet.) (addressing state law limitations provisions); *Janmeja v. Bd. of Supervisors of La. State University and Agricultural and Mechanical College,* 96 Fed.Appx. 212, 214 (5th Cir.2004) (unpublished). If the employee fails to submit a timely charge, the employee may not challenge the alleged discriminatory conduct in court. 42 U.S.C. § 2000e-5(f)(1); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.,* 550 U.S. 618, 127 S.Ct. 2162, 2166-67 (2007). The operative date from which the limitations period begins to run is the date of notice of the adverse action, not the date that the adverse action takes effect. *Clark v. Resistoflex Co.,* 854 F.2d 762, 765 (5th Cir.1988); *Stith v. Perot Systems Corp.,* 122 Fed.Appx. 115, 117 (5th Cir.2005) (unpublished).

Under the law, a charge is considered filed when the complainant presents to the commission a written document setting forth all of the elements necessary to put the respondent on notice that a claim of discriminatory conduct is being made. *Federal Exp. Corp. v. Holowecki,* 552 U.S. 389, 128 S.Ct. 1147 (2008). Accordingly, courts in Texas have often found that, though the official charge may be dated after the limitations period has run, the charge may be deemed timely filed when it relates back to a timely-filed document, including an intake questionnaire, letter, or fax which sets forth the essential elements of the charge. *See Holowecki,* 552 U.S. at 404, 128 S.Ct. 1147 (holding that intake questionnaire and detailed affidavit sufficient to constitute "charge"); *see also Texas Tech Univ. v. Finley,* 223 S.W.3d 510, 515 (Tex.App.—Amarillo 2006, no pet.) (charge filed with TWC deemed timely even though dated after

deadline because plaintiff's initial complaint letter, which satisfied requirements of proper complaint, filed before deadline).

Here, the evidence demonstrates that Jones first contacted the EEOC on December 10, 2008, when he faxed a three-page document to the agency indicating his intent to file a charge alleging discriminatory conduct on the basis of religion, age, and retaliation. *See* Appx. at 600-603. Jones later perfected his charge by signing an official EEOC Charge Form on or around January 13, 2009. *See* Appx. at 606-607. Thus, the earliest date upon which the Court can consider Jones' charge filed is December 10, 2008. Accordingly, for the purposes of his *State* law claims under the Texas Labor Code, Jones may not recover for any allegedly discriminatory actions occurring prior to June 13, 2008 (180 days before his charge was filed). Similarly, under his *federal* claims, Jones may not recover for any allegedly discriminatory actions occurring before February 14, 2008 (300 days before his charge was filed). Jones, however, asserts in his charge and in this lawsuit, that he seeks redress for a number of allegedly discriminatory actions which clearly occurred well before either of these deadlines. Specifically, Jones asserts the following untimely claims:

(1)    discrimination on the basis of age and religion in connection with ASU's February 2007 decision to hire Tim Roden (and not Plaintiff) for the position of Chair of the Computer Science Department. (*See* Appx. at 606; Pl's First Amended Complaint, ¶¶ 5.13-5.15, pp. 17-18);

(2)    reprimands for engaging in allegedly protected activity concerning his religion and religious statements in class. (*See* Pl's First Amended Complaint, ¶¶ 5.10-5.11, pp. 16-17);

(3)    failure to accommodate Jones' religious beliefs. (*See* Pl's First Amended Complaint, ¶ 5.06, p. 15);

(4)    notes in November 2006 and March 2007 evaluations concerning Jones' violation of ASU policies concerning academic freedom. (*See* Appx. at 606);

(5)    issuance of a non-reappointment notice in August 2007. (*See* Appx. at 606);

(6)    placing of an email "censure" in his personnel file in September 2007 for refusing a direct supervisory order to assist and chaperone a student group with an out-of-town academic competition (*See* Appx. at 606);

To the extent Jones seeks to recover any relief for these allegations, all of these actions occurred well over one year before Jones ever filed a charge of discrimination. The Fifth Circuit has held unequivocally that "discrete acts" are those that are actionable in themselves, such as termination, failure to promote, denial of transfer, demotion, or refusal to hire. *See Newton v. Securitas Sec. Servs., USA, Inc.,* 250 F. Appx. 18, 21 (5th Cir.2007) (unpublished). A past discrete discriminatory act that is outside the limitations period cannot be sued on, even if the prior act has consequences that reach into the limitations period. *See Ledbetter v. Goodyear Tire & Rubber Co.,* 550 U.S. 618, 127 S.Ct. 2162 (2007) (superseded by statute, Lilly Ledbetter Fair Pay Act of 2009, Pub.L. No. 111-2, 123 Stat. 5 with respect to compensation claims only). Because these listed actions are separate and discrete actions, Jones should have filed his charge within 180 and 300 days of their occurrence if he wished to sue specifically for these alleged wrongs. Because he did not, he has failed to comply with the statutory preconditions to suit with respect to any claims premised on these events. Thus, to the extent he intends to sue for relief on these adverse actions, Jones' claims are barred by limitations.[2] Accordingly, the Court should dismiss any Title VII and/or Texas Labor Code claims premised on these adverse actions.

3. **Jones' claims under Chapter 110 of the Texas Civil Practice and Remedies Code are barred because he failed to provide the required statutory notice and because he failed to file the claim within one year of having actual notice of the alleged substantial burden on his free exercise of religion.**

In Count Three of his First Amended Complaint, Jones asserts a claim under Chapter 110 of the Texas Civil Practice and Remedies Code, commonly referred to as the Texas Religious Freedom Restoration Act ("RFRA"). *See* Pl's First Amended Complaint, ¶¶5.16 – 5.18, pp. 18-19. However, even if Jones could demonstrate facts that establish a violation of the RFRA (which he cannot), his claim is barred because he failed to comply with all of the RFRA's statutory prerequisites for suit.

The RFRA prohibits the State, its agencies, and its subdivisions from substantially burdening a person's free exercise of religion. Tex. Civ. Prac. & Rem. Code §110.003 (West 2010). The Act authorizes

---

[2] ASU does not argue that Jones is precluded from including evidence of these allegedly discriminatory actions in order to try to establish his hostile work environment claim; however, under the case law, none of these actions can serve as a basis for an award of relief of any kind outside the parameters of a hostile work environment claim.

a party to bring suit for declaratory, injunctive, and/or monetary relief, and authorizes an award of attorneys'

fees and expenses for the successful prosecution of a claim or defense provided for under the RFRA.  TEX.

CIV. PRAC. & REM. CODE §110.003 (West 2010).  In addition, however, any person asserting an action under

the RFRA must comply with certain specific pre-suit requirements, which are explicitly set forth in the Act:

> (a)  A person may not bring an action to assert a claim under this chapter unless, 60 days before bringing the action, the person gives written notice to the government agency by certified mail, return receipt requested:

> (1) that the person's free exercise of religion is substantially burdened by an exercise of the government agency's governmental authority;

> (2) of the particular act or refusal to act that is burdened; and

> (3) of the manner in which the exercise of governmental authority burdens the act or refusal to act.

TEX. CIV. PRAC. & REM. CODE §110.006(a) (West 2010).  Furthermore, the RFRA carries an explicit one-

year statute of limitations:

> (a)  A person must bring an action to assert a claim for damages under this chapter not later than one year after the date the person knew or should have known of the substantial burden on the person's free exercise of religion.

> (b)  Mailing notice under Section 110.006 tolls the limitations period established under this section until the 75th day after the date on which the notice was mailed.

TEX. CIV. PRAC. & REM. CODE §110.007 (West 2010).  Here, Jones' claims are precluded as a matter of law

because he did not comply both with the notice provision and the applicable statute of limitations.

Accordingly, Jones' RFRA claims should be dismissed on summary judgment.

> **(a)** **Jones brought his lawsuit after the statute of limitations expired.**

Jones first filed his lawsuit alleging a claim under the RFRA on July 10, 2009.  *See* Appx. at 631-

632.  Since then, he has reiterated the same claim in several different iterations of his complaints/petitions,

ultimately setting forth the claim explicitly in his current live pleading, his First Amended Complaint:

> 5.17    As set forth above, Defendant's actions constitute violations of the Texas Religious Freedom Restoration Act, which prevents Defendant from imposing a substantial burden on the exercise of religion.  Defendant imposed upon Professor Jones' free exercise

> of religion when they applied the State System's Rules and Regulations to prohibit Professor
> Jones' from exercising his religious beliefs and practices in the classroom.  Such a policy
> forced Professor Jones to choose between the benefit of his employment over following his
> religious beliefs and practices.

Pl's First Amended Complaint, ¶5.17, p. 19.  According to the allegations in his live Complaint, Jones was first made aware of this alleged imposition on his right to free exercise of religion in August of 2006.  Pl's First Amended Complaint, ¶4.6, pp. 5-6.  In fact, he was aware of the alleged substantial burden because no later than August 30, 2006, Jones emailed the alleged offender, McCamant to complain about the alleged burden.  Pl's First Amended Complaint, ¶4.7, p. 6; Ex. 21, p. 1.  However, Jones failed to bring the lawsuit until almost three years later, well past the date upon which he "knew or should have known of the substantial burden on [his] free exercise of religion."  TEX. CIV. PRAC. & REM. CODE §110.007.  Accordingly, even if Jones could establish the facts necessary to present a claim under the RFRA, his lawsuit was filed almost two years beyond the limitations period expressly set forth in the statute.  Accordingly, Jones' RFRA claim is barred as a matter of law and the Court should grant the Defendant's summary judgment motion on that ground.

### (b) Jones failed to provide the required notice before bringing his lawsuit.

Even if Jones had not failed to comply with the statutory limitations period in the RFRA, his claim would nevertheless fail because he did not provide the statutory notice prior to filing his lawsuit.  The statute requires that notice be provided to the Defendant *by certified mail, return receipt requested*, 60 days before the lawsuit is filed.  TEX. CIV. PRAC. & REM. CODE §110.006(a).  In his deposition, taken on June 16, 2010, approximately one year *after* he filed this lawsuit, Jones admitted that he had never sent a notice letter containing the information in §110.006(a) to Angelo State University by certified mail, return receipt requested.  Appx. at 45.

Jones' testimony on this point is further confirmed by his responses to Defendant's First Request for Production of Documents.  In Request Nos. 38 and 39, the Defendant requested that Jones provide copies of all certified mail letters he has sent to Angelo State purporting to provide statutory notice of his RFRA claim, as

well as the certified mail "green card" showing that the letter was received by the University.  In response to *both* requests, Jones stated that he was unable to locate any documents responsive to them.  Appx. at 655-656.

Finally, the only notice letter ever provided (purportedly) pursuant to §110.006(a), is a letter from Jones' attorney to counsel for Angelo State University dated March 10, 2010, *three and a half years* after the alleged substantial burden supposedly occurred, and approximately 8 months *after* Jones filed his lawsuit in this case.  Appx. at 669; Appx. at 670; Appx. at 669.  However, this letter is not sufficient to overcome Jones' failure to provide the statutory notice prior to bringing suit.  All statutory provisions are to be given their plain meaning.  *City of Rockwall v. Hughes,* 246 S.W.3d 621, 625 (Tex.2008).  Section 110.006(a) specifically requires that the notice letter be sent *prior* to the filing of the lawsuit and by certified mail, return receipt requested.  TEX. CIV. PRAC. & REM. CODE §110.006(a).  Jones did not comply with either of these requirements until after his lawsuit had been on file for eight months.  However, section 311.034 of the Texas Government Code (aka. "the Code Construction Act") makes all pre-suit conditions mandatory and jurisdictional.  TEX. GOV'T CODE §311.034 (WEST 2010).  Although the RFRA contains an express waiver of immunity, the Code Construction Act makes that waiver subject to all statutory conditions precedent.  Because Jones failed to send the statutory notice 60 days *before* filing suit, he failed to comply with a jurisdictional requirement.  Accordingly, the Court should *grant* the Defendant's summary judgment motion and dismiss Jones' RFRA claims on summary judgment.

**4.      Jones' breach of contract claims fail on their merits because there is no evidence of either a valid contract, nor any breach by ASU.**

The essential elements of a breach of contract claim are:  (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.  *Valero Mktg. & Supply Co. v. Kalama Int'l,* 51 S.W.3d 345, 351 (Tex.App.—Houston [1st Dist.] 2001, no pet.).  To prevail on his breach of contract claim, therefore, Jones must establish that (1) a valid agreement exists; (2) he performed under the agreement; (3) ASU breached some material provision of the agreement; and (4) Jones suffered damages.  Here, Jones'

claim fails on its merits because Jones can establish neither a breach of any contractual terms by ASU, nor any damages attributable to the breach.

### (a)     No evidence of any breach.

Non-tenured faculty on the tenure track at ASU, like Jones, are employed on a 9-month contractual basis beginning on September 1 of each year (the start of the State's fiscal year cycle) and ending on May 31 of the following year. *See* Appx. at 671; Appx. at 672. This 9-month appointment generally coincides with the start and end of ASU's Academic Year (which usually begins in mid-August and ends in mid-May). Appx. at 12. Jones was initially hired to begin work in the 2005-2006 Academic Year, so his initial teaching appointment commenced on September 1, 2005 and ended on May 31, 2006. *See* Appx. at 671. He was retained during the summer of 2006 to teach some courses, however, and was reappointed for a second Academic Year beginning his contract on September 1, 2006 and completing it on May 31, 2007. Appx. at 12. Jones was again reappointed for a third year beginning on September 1, 2007 and ending on May 31, 2008. Appx. at 12. It is undisputed that his terminal year was the 2008-2009 Academic Year; thus, his final contract began on September 1, 2008 and ended on May 31, 2009. Appx. at 12. Finally, the ASU Faculty Handbook (relevant excerpts of which were given to Jones on August 14, 2007) specifically states that nontenured faculty have no expectation of continued employment beyond their current appointment. Appx. at 20; Ex. 26, p. 3, Appx. at 675.

Jones does not suggest that any of these separate, distinct "contracts" were terminated before their completion by ASU, nor does he contend that ASU failed to pay him his stated monthly salary for each of the nine months for each contract. Rather, he claims that the "breach" resulted from ASU's alleged failure to abide by its own rules and regulations in issuing him a non-reappointment notice and then failed to provide him with some form of "hearing" after issuing the non-reappointment. *See* Pl's First Amended Complaint, ¶¶ 5.29-5.33, pp. 23-24. Neither of these arguments is persuasive.

The only "contracts" between Jones and ASU are of his series of 9-month teaching appointments beginning in the fall of 2005. Appx. at 12. Jones argues that, because his appointments were "subject to the rules and regulations of the Board of Regents," (*See* Appx. at 671), that if ASU failed to follow any of its rules or regulations, it would constitute a breach of the contractual agreement. Pl's First Amended Complaint ¶¶5.31-5.33, pp. 23-24. For purposes of addressing this matter, the proper rules to which the Court must look are the Texas Tech University System Regents Rules.[3] Under both the Texas Tech University System Regents Rules and ASU policy, there is no requirement that a reason be given for non-reappointment of a non-tenured, tenure track faculty member like Jones. Appx. at 676; *see also* Appx. at 777. The rules and policies required only that Jones be notified of his non-reappointment through the issuance of a terminal contract for one academic year because he was beyond his second academic year of employment with ASU. Appx. at 676; *see also* Appx. at 777. Jones received that very notice on June 13, 2008. Appx. at 110. Accordingly, there was no breach in connection with the actual non-reappointment.[4]

Further, with respect to Jones' claim that he was entitled to a "hearing" after the non-reappointment decision was made, that claim is without merit. The ASU Faculty Grievance Policy puts the onus on the aggrieved faculty member to file a formal grievance to contest the adverse employment action. Appx. at 779-780. Rather than follow the policy (which Provost Coers provided him in July 2008), Jones opted to appeal directly to the President, a process not contemplated by ASU's policies, and which he had successfully utilized a year earlier after his first non-reappointment. Appx. at 37-38; Appx. at 77; Appx. at 783; Appx. at 784. Despite this breach of protocol, President Rallo considered Jones' appeal and ultimately rejected it. Appx. at 77-78, Thus, Jones actually received his "hearing" and had the opportunity to present his case, just

---

[3] Angelo State University transitioned from the Texas State University System to the Texas Tech University System effective September 1, 2007. Accordingly, any appointments beginning in September 2007 to the present would be subject to the Texas Tech University System's governance.

[4] While Jones asserts that Texas Tech University System rules and ASU policy prohibit ASU from basing employment decisions on discriminatory or constitutionally impermissible reasons, and that by allegedly doing so, ASU breached the contract, this argument is simply a recasting of Jones' discrimination claims. He must necessarily prove that illegal discrimination motivated the decision in order to show that the alleged anti-discrimination policies at ASU were violated. Because that issue is addressed and disproven in another section of this brief, ASU does not address that argument here.

as he had in the 2007 non-reappointment.  The fact that he did not receive a formal "hearing" is of no moment because the policy itself does not require one; instead, it only requires that, when a proper grievance is filed alleging an unlawful basis for the non-reappointment, the Tenure Advisory Committee will convene a committee to examine the complaint – no hearing is guaranteed.  Appx. at 777-778.  Although no committee was convened by the Tenure Advisory Committee, that is attributable to the fact that Jones – without any satisfactory explanation (even after the fact at his deposition), and in express contravention to the policy he was shown – did not file a grievance to contest the non-reappointment.  Appx. at 123.  Jones *did* receive a review of the decision by President Rallo (at his own request), and thus a substantially similar opportunity to present his case for reversal of the non-reappointment decision, as well as a terminal appointment for an additional Academic Year, fully in compliance with ASU policy.  Accordingly, Jones can present no evidence that ASU breached his contract by failing to follow any material policies, and for that reason, the Court should grant ASU's summary judgment motion.

### (b)       No evidence of damages attributable to any breach.

Even if he could establish even a technical breach by ASU, however, Jones has no evidence of any damages attributable to that alleged breach.  As noted above, Jones had no legitimate expectation of re-employment beyond each successive Academic Year.  Appx. at 675.  Thus, ASU's act of issuing him a terminal appointment does not establish that he suffered any damages attributable to any specific "breach" because ASU clearly followed all of its requirements for issuing that notice.  The extent of Jones' "contract" was his final 9-month appointment for which he was paid all due consideration.  He seems to want to argue that he would have been issued another contract from 2009-2010 had he not been reappointed.  While this logical syllogism is certainly true (if 2009 had not been Jones' last year, by definition, he would have worked at ASU in 2010), it is not a breach of any contract.  At worst, it may be considered an interference with a prospective contractual relationship, but once Jones' contract for the 2008-2009 Academic Year ended by its

own terms, there ceased to be a contractual relationship between the parties.[5]  Jones received all pay for

which he contracted, all fringe benefits, and all other items of value (including travel funds, vacation days,

etc.) that ASU promised him.  In short, Jones can point to no damages caused by any breach of his contract.

Accordingly, he fails to establish a viable claim on the merits.

> **5.     Jones cannot make out a prima facie case of discrimination and hostile work
> environment under Title VII or the Texas Labor Code because he cannot demonstrate
> that he was either replaced by someone outside his protected class, treated less
> favorably than other similarly situated employees outside his protected class, or
> otherwise discriminated against.**

> **(a)     Title VII/Labor Code discrimination (religion).[6]**

Title VII[7] prohibits discrimination in employment decisions on the basis of "race, color, religion, sex

or national origin."  42 U.S.C. § 2000e-2(a)(1).  Absent direct proof of discrimination, a plaintiff may

assemble proof using circumstantial evidence under the framework set forth in *McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973):

"First, the plaintiff must establish a prima facie case of discrimination.  Second, the employer must

respond with a legitimate, nondiscriminatory reason for its decision.  This burden on the employer is only

one of production, not persuasion, involving no credibility assessments."  *Russell v. McKinney Hosp.*

*Venture,* 235 F.3d 219, 222 (5th Cir.2000) (internal quotation marks and citations omitted).  If the employer

meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of

material fact as to whether the nondiscriminatory reason is a pretext or is only one of the reasons for the

---

[5] In fact, the same analysis is true for each of Jones' successive 9-month appointments.  As each expired, the contractual relationship attributable to that contract ended and a new contractual relationship was not formed until Jones next appointment began.  Because each contract carried no expectation of continued employment beyond its stated term (Ex. 26, p. 3, Appx. at 675), even if ASU failed to follow its non-reappointment procedures, Jones could point to no damages attributable to that failure in the current contract year.

[6] ASU does not challenge Jones' prima facie age discrimination case.  Further, it is clear that Jones premises his retaliation claim solely on allegations that he complained about religious discrimination.  Pl's First Amended Complaint, ¶¶5.9-5.15, pp. 16-18.  If Jones intends to assert a retaliation claim based on complaints of age discrimination, ASU reserves the right to challenge that claim in its reply.

[7] Chapter 21 of the Texas Labor Code correlates state anti-discrimination law with federal law; therefore, in this brief, ASU's references to Title VII are intended to apply equally to Jones' claims under the Texas Labor Code.  With respect to Jones' age discrimination claims under the Labor Code, however, ASU will set forth separate relevant facts, though the law remains essentially identical.

employer's conduct and the plaintiff's protected characteristic is another motivating factor. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.,* 482 F.3d 408, 412 (5th Cir.2007).

To establish a prima facie case of discrimination, a plaintiff must show that he is a member of a protected class; is qualified for the job; suffered an adverse employment action by the employer; and was either replaced by someone outside his protected group or received less favorable treatment than a similarly situated individual outside the protected group. *McCoy v. City of Shreveport,* 492 F.3d 551, 556 (5th Cir.2007). "In disparate treatment cases, the plaintiff-employee must show nearly identical circumstances for employees to be considered similarly situated." *Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 353 (5th Cir.2007) (internal quotation marks and citations omitted).

For the purposes of summary judgment, ASU does not dispute that Jones can satisfy the first three elements of his prima facie case for religious discrimination. He is a Christian; met the qualifications for performing the job as an Assistant Professor of Computer Science at ASU; and, he suffered an adverse employment action when his appointment was not renewed on June 13, 2008. However, Jones cannot establish a prima facie case of religious discrimination under Title VII/Chapter 21 because he cannot present sufficient evidence to demonstrate that he was replaced by someone outside his protected class or treated less favorably than similarly-situated co-workers outside his protected classes.

### Jones' Replacement

Jones bears the burden to establish that ASU replaced him with someone outside his protected class. On his EEOC charge form and in his lawsuit, Jones asserts that he is a Christian. Appx. at 606; Pl's First Amended Complaint, ¶4.3, p. 4. The evidence demonstrates that Jones was replaced by Rob LeGrand. Appx. at 688. There is no evidence in the record, however, nor can Jones present any evidence to establish that LeGrand was not a Christian.[8] Because the burden is on Jones to produce evidence to support his prima

---

[8] ASU does not keep tabs on the religious preferences of its employees and has no knowledge of LeGrand's religious affiliation.

facie case, his inability to establish that his replacement was outside his protected class necessarily defeats his prima facie case to the extent he relies on that prong of the *McDonell-Douglas* burden-shifting rubric.

### Treatment of Similarly Situated Co-Workers Outside his Protected Class

Likewise, assuming Jones intends to prove his case based on a comparison of his treatment to similarly-situated co-workers, Jones bears the burden of establishing both that the purported comparators are similarly situated and that they are outside his protected class.  The evidence establishes that, during his tenure in ASU's Computer Science Department, Jones had approximately four co-workers:  Twila Lehmann, Mark Motl, Mark Crouch, and Beth Niehues.  Appx. at 51.  Lehmann and Crouch both testified that they are Christians.  Appx. at 493-494; Appx. at 543-544.  While Motl and Niehues gave no such testimony, neither testified that they profess any other religion.  Jones has presented no evidence to establish that either of these individuals observe non-Christian religions and thus fall outside his protected class.[9]  Because it is his burden to produce such evidence, his failure to do so precludes him from relying on this basis to establish a prima facie case.

**(b)     Hostile work environment.**

A plaintiff who alleges a hostile work environment claim pursuant to Title VII must typically prove five elements: (1) he belongs to a protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on the person's religion or religious beliefs; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and did not take prompt remedial action.  *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 393 (5th Cir.2007) (setting out the elements in a sex harassment claim.  Proof of the fifth element is not required where the purported harasser is a supervisor.  *Id.* at 393 n. 2.  Here, Jones cannot present any evidence to

---

[9] Furthermore, Jones cannot establish that Motl and Niehues are "similarly situated" to him.  Motl is a tenured faculty member with more employment protections by virtue of that designation.  Appx. at 51.  Niehues, on the other hand, while not tenured, is an Instructor who is not on the tenure track, and thus has different job requirements and duties (such as no research and reduced service requirements).  Comparators are similarly situated when the plaintiff can show that the circumstances surrounding the comparators are "nearly identical" to those of the aggrieved plaintiff.  *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.,* 245 F.3d 507, 514 (5th Cir.2001).

demonstrate that the occurrences he calls "harassment" were either (1) based upon his religion or age; or (2) affected a term, condition, or privilege of his employment at ASU.

### i.   "Based on religion or age."

Jones has no evidence to establish that any of the adverse actions he calls "harassment" were based upon either his age or his religion.  Although in his Objections and Answers to Defendants' First Set of Interrogatories, Jones recites a litany of supposed "harassing" employment decisions, there is not one single detail to which he can point evidencing that any of those decisions were made on the basis of Jones' religion or age.  At best, all Jones can surmise is that religion *must* be a reason because the incidents recounted occurred after McCamant counseled him about making statements professing his religion in his classes in August of 2006.  In fact, other than the fact that these alleged harassing actions occurred at various points in time after Jones was first counseled by McCamant about his inappropriate comments, Jones provides absolutely no evidence at all linking these supposedly adverse actions to his religious beliefs.  To the contrary, Jones' suppositions are discounted by the fact that a number of *favorable* actions occurred during this very same time period.  Within two months of the initial conversation about improper comments, McCamant and then-interim Dean Thomas Bankston both provided Jones with a favorable performance evaluation and an unqualified recommendation for reappointment for the following year.  Appx. at 719-722; Appx at 723-725.  Overwhelmingly, the evidence demonstrates that other than his own speculation, Jones cannot tie his troubles at ASU to anything having to do with his religious beliefs.  Mere speculation and conjecture, however, are not competent summary judgment evidence.  *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994); *Waggoner v. City of Garland,* 987 F.2d 1160, 1164 (5th Cir.1993) (observing that subjective beliefs alone cannot establish a claim of discrimination).  Because Jones points to nothing beside conjecture to establish that he suffered harassment based on his religious beliefs, the Court should grant ASU's motion for summary judgment and dismiss his hostile work environment claims in their entirety.

Jones has even less evidence demonstrating that any of these actions were based on his age.  In his deposition, Jones admitted that neither McCamant, Blount, Roden, nor Coers ever made any statements about his age.  Appx. at 50.  When asked to set forth his evidence to show that his age was a motivating factor in any of the adverse actions that occurred, his only response, on numerous occasions, was that it was a "possibility" that his age was a factor.  Appx. at 47-48, 50.  As noted above, however, mere speculation and conjecture are not competent summary judgment evidence.  *Forsyth*, 19 F.3d at 1533.  Moreover, during his tenure at ASU, there were at least two co-workers – Twila Lehmann and Mark Crouch – who were older than Jones, but did not experience any harassing or unwelcome conduct.  In fact Lehman retired of her own accord just one year after Jones began working at ASU, while Crouch continues to work at the university with no hint of concern over age-related harassment.  Given the fact that Jones has presented absolutely no competent summary judgment evidence to show that the allegedly harassing behavior was based on his age, the Court should grant ASU's motion for summary judgment and dismiss Jones' hostile work environment claim for failure to establish an essential element of his prima facie case.

## ii.    "Affecting a term, condition, or privilege of employment."

Assuming that Jones can establish that the conduct about which he complains constitutes "harassment," and assuming the Court accepts that this alleged harassment was based upon Jones' religion or age, Jones still cannot prevail upon summary judgment unless he can show that a reasonable jury could conclude that the harassment affected a term, condition, or privilege of his employment at ASU.  For harassment to affect a term, condition, or privilege of employment, it must be "sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment." *Celestine v. Petroleos de Venezuella SA,* 266 F.3d 343, 353 (5th Cir.2001).  The determination is one of objective reasonableness, which requires that the Court consider all circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367 (1993).

Jones cannot identify any conduct by Roden, Coers, McCamant, Blount, Rallo, or anyone else that amounts to physically threatening behavior, humiliating insults or comments regarding his age or religion, or any other conduct that is typically identified in "hostile work environment" cases. Instead, he argues that Coers and McCamant, and ultimately, Roden, instituted a campaign against him after it came to light in August 2006 that he had made some type of comments in his classes referring to his religious beliefs. In particular, he points to the fact that McCamant counseled him in August 2006 that his comments violated the Texas State University System Regents' Rules pertaining to academic freedom and asked him to stop making the comments. He also claims that he and McCamant carried on an occasional discourse via email in which Jones demanded an explanation of the rule and how his comments violated it, while McCamant simply declined to elaborate further. Appx. at 726-732. However, nothing in the emails even remotely suggests that McCamant was harassing Jones. In fact, McCamant's emails simply relay information from his administrators indicating to Jones that further discussion of the matter is closed and that Jones should cease making the statements. Appx. at 726-732. Further, there is no additional documentation about the issue until it is simply noted on Jones' faculty evaluation that McCamant and Jones discussed the matter. Appx. at 722. Subsequent to November 2006, there is no other document demonstrating that McCamant ever thought any more about the issue. Thus, from November 2006 until Jones' non-reappointment in August 2007, there is no documentary evidence to establish any connection whatsoever between the two events. In short, other than his own speculation, Jones can show no correlation between his religious beliefs and any "harassment" he claims existed. Finally, the frequency and type of "harassing" conduct to which Jones points simply does not rise to the level of severity and pervasiveness necessary to give rise to a hostile work environment. While frequent harassing comments and actions that are not particularly severe, or a small number of egregious actions may suffice to establish a hostile environment (*Ramsey v. Henderson,* 286 F.3d 264, 268 (5th

Cir.2002)), Jones clearly attempts to group less than a handful of less-than-pleasant exchanges with his supervisors concerning normal and unremarkable employment occurrences into an organized scheme simply by virtue of the fact that the events occurred at various points in time over the course of several years after Jones got his feelings hurt when McCamant told him he felt Jones' religious comments contravened university policy. Because Jones presents no evidence of an objectively hostile work environment, the Court should grant ASU's motion and dismiss that claim.

**6.      Even if Jones could make out a prima facie case of discrimination and/or retaliation under Title VII or the Texas Labor Code, his claims still fail because he cannot ultimately prove requisite causation.**

ASU has always maintained that Jones was not reappointed because of his poor teaching evaluations in the fall of 2007, his refusal to follow lawful and reasonable directives from his department chair, and his poor departmental collegiality. Appx. at 187. In fact, Department Head Tim Roden recounted in Jones' spring 2008 performance evaluation these very reasons for providing Jones with an unsatisfactory evaluation. Ex. 3-D, pp. 4. The proffering of these reasons satisfies ASU's burden to articulate at least one legitimate, non-discriminatory reason for its actions under the *McDonnell-Douglas* paradigm. *See, e.g., Garrett v. Judson Indep. Sch. Dist.,* 299 Fed.Appx. 337, 345 (5th Cir.2008) (unpublished) (poor performance evaluations, student complaints, and disciplinary actions are legitimate, non-discriminatory reasons); *Murungi v. Xavier Univ. of Louisiana,* 313 Fed.Appx. 686, 690 (5th Cir.2008) (unpublished) (poor student evaluations, student complaints, and unprofessional behavior are legitimate, non-discriminatory reasons); *Grey v. Dallas Indep. Sch. Dist.,* 265 Fed.Appx. 342, 346 (5th Cir.2008) (unpublished) (insubordination and habitual lateness are legitimate, non-discriminatory reasons).

To survive summary judgment on his discrimination claims, then, Jones must ultimately provide evidence to create a genuine issue of material fact that either (1) ASU's reasons for non-reappointing him are false and are a pretext for discrimination, or (2) that although ASU's reasons are true, Jones' religion and/or age was a motivating factor for the adverse employment action as well. *Id.* Jones has never conceded the

truth of ASU's legitimate reasons, but rather asserts that the reasons given are false – thus, he has asserted the pretext alternative.  Accordingly, he must produce sufficient evidence for a reasonable jury to find either that ASU's explanation is false or unworthy of credence, or that a discriminatory reason more likely motivated ASU's decision to non-reappoint him.  *Reeves v. Sanderson Plumbing,* 530 U.S. 133, 143, 120 S.Ct. 2097 (2000).  In fact, "[t]o carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination."  *Laxton v. Gap, Inc.,* 333 F.3d 572, 578 (5th Cir.2003).  "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions."  *Id.* at 579 (quotation marks omitted).  Here, however, Jones, can produce no such substantial evidence.

As with Title VII discrimination claims, a plaintiff seeking to avoid summary judgment on a Title VII retaliation claim must also successfully meet the burden-shifting mechanism of *McDonnell-Douglas.*  If the plaintiff makes out a prima facie case of retaliation, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action.  *Aryain v. Wal-Mart Stores Tex. LP,* 534 F.3d 473, 484 (5th Cir.2008).  If the employer satisfies its burden of production, the plaintiff must prove that the City's proffered legitimate, non-discriminatory reason is pretext for a retaliatory purpose. *Id.*  Unlike in the discrimination context, however, in doing so, the plaintiff must prove that the adverse employment action taken against him would not have occurred "but for" his protected conduct.  *Septimus v. Univ. of Houston,* 399 F.3d 601, 608 (5th Cir.2005).

### Poor evaluations.

Jones argues that his evaluations were not poor, particularly in the spring of 2008, the semester during which Roden recommended his non-reappointment.  He argues that his student evaluations were beyond reproach, and that Roden's evaluation of his overall performance was simply wrong.  Further, he disputes that he failed to follow direction, but argues instead that Roden was picking on him by ordering him to do things that were traditionally voluntary in nature.  These contentions are not supported.  Roden based

his evaluation in February 2008 in part on Jones' Fall 2007 teaching evaluations.  Appx. at  196-198.

According to the data, Jones received exceptionally poor scores, scoring in the "Much Lower" and "Lower"

categories frequently, raising "red flags," while none of his co-workers had such low scores.  Appx. at 240-

241; *see also* Appx. at 242-469.  Thus, Roden's concern is completely justifiable.

Jones argues, however, that his evaluation scores in the spring of 2008 were remarkably higher, thus

showing that his teaching was much better and did not warrant a non-reappointment.  However, although Jones'

scores on his evaluations appear to have risen dramatically, his contention that this demonstrated competent (if

not superior) teaching is a stretch.  Jones' teaching evaluations in the spring of 2008 consisted of unreliable and

unrepresentative data.  All of his classes were of marginal size and all of them had poor percentages of students

who actually filled out the evaluation instrument.  Accordingly, Jones' spring 2008 evaluation scores were rated

"unreliable" and "not representative" of his actual teaching ability.  Appx. at 240; *see also* Appx. at 242-314.

Essentially, the evaluations told Roden virtually nothing about Jones' improvement or lack thereof.  Appx. at

240.  Additionally, several of Jones' students voiced complaints about his teaching style and ability, as well as

the fact that his classes were uninformative at best.  Appx. at 556-557; Appx. at 560-561.  Given all of this

information, as well as Jones' documented history of at least two student complaints (Appx. at 747-751).

Because this information was available to Roden in a historical context, Jones' teaching ability, especially as it

was reflected in his student evaluations, was a legitimate concern.

### Refusal to take direction.

In addition to his marginal teaching, Jones had a demonstrated inability to take direction from his

supervisors, and a bad habit of going around them or over their heads when he did not get what he wanted.

Roden's primary example was Jones' flat out refusal of a direct order to oversee a group of department

students at a scholarly competition in Abilene.  Appx. at 85.  However, Jones had a habit of such behavior.

When McCamant was Jones' supervisor, Jones regularly went around him or over his head.  For instance,

Jones sough a significant sum of money for travel in 2006-2007.  After McCamant gave him a limit of

$1500, Jones, without consulting McCamant, refused to be limited by McCamant's tight departmental budget and went over his head to the interim Dean for additional funding.  Appx. at 761-762.  Additionally, despite the fact that ASU is a *teaching* university, and in an incredible show of poor taste, Jones went over McCamant's head in early 2007 to explore the possibility of "buying out" some of his teaching responsibilities, a move that McCamant later told Jones would have left him severely shorthanded on available teachers.  Appx. at 763-764.  Although nothing came of it, the fact remains that Jones was setting a pattern of selfish behavior at the expense of the Department and despite the directions of his supervisor.

Finally, in addition to the above, in Jones' October 2008 evaluation at the start of Jones' terminal year, Roden noted that the insubordinate trend continued.  Jones was not available the week before spring classes (prior to non-reappointment), despite Roden's direction to all faculty that they should be.  Additionally, Jones submitted a substantial grant proposal that took time from his class preparation even though Roden asked him not to do so.  Appx. at 765.  Thus, Roden's concerns about Jones' refusal to take direction were certainly warranted.

### Poor departmental citizenship and "collegiality."

Jones further states that Roden's assessment that he showed poor departmental citizenship and a lack of collegiality is false; however, the overwhelming evidence is to the contrary.  Jones collaborated on research with none of his department co-workers.  All of them testified that he had a closed door policy and did not interact much with them.  The department members had a standing group lunch outing on Wednesdays, yet most of Jones' co-workers could not recall him ever attending the lunch group, despite being invited to do so.  Those who *could* recall any instances stated that it was not more than once or twice in Jones' four years at ASU.  Appx. at 536; Appx. at 695-696; Appx. at 713, 716.  Accordingly, Roden's assessment of Jones' collegiality and poor departmental citizenship are clearly supported by the evidence.  Thus, the Court should grant ASU's motion for summary judgment on Jones' discrimination claims because he cannot demonstrate that the decision was a pretext for unlawful discrimination or retaliation.

**7.    Jones' Federal Declaratory Judgment Act claim fails because he has sued the wrong party, has no standing and has requested inappropriate declarations not contemplated by the Act.**

Finally, Jones seeks relief under the Federal Declaratory Judgment Act in the form of various declarations from the Court concerning ASU's conduct.  First, he seeks a declaration that Rule 4.71 of the Texas State University System[10] is unconstitutional as applied to him in August 2006 when McCamant requested that Jones refrain from making religious statements and professions of faith in the classroom. Second, he asks for a declaration that ASU violated Jones' unspecified constitutional rights, violated and/or breached its contract with Jones, violated its own unspecified policies, procedures, rules, guidelines, and/or regulations, and violated unspecified state and/or federal law.  Because Jones is not entitled to any such relief and has not properly brought a claim for declaratory relief, the Court should grant ASU summary judgment on this claim.

**(a)    Jones has failed to join a necessary party to obtain a declaration concerning the constitutionality of Texas State University System Rule 4.71 because he has not sued that System or its board of regents.**

All persons who have an interest in the determination of questions raised in a declaratory judgment suit should be before court hearing the case.  *Diamond Shamrock Corp. v. Lumbermens Mut. Cas. Co.,* 416 F.2d 707, 710 (7th Cir.1969).  Here, Jones asks this Court to declare the unconstitutionality of a rule enacted by the Texas State University System, which is not a party to this lawsuit.  Moreover, the only defending party is ASU, a component institution of the Texas Tech University System.  Prior to the court-imposed scheduling order deadlines, there was no procedural bar to Jones adding the Texas State University System as a defendant in this lawsuit; however, Jones opted to allow the amended pleadings deadline to elapse without ever adding Texas State, or amending his request to ask the Court to declare unconstitutional some other rule that may actually be enforceable by ASU.  Because the Texas State University System is a necessary and indispensable party to a claim seeking to declare that entity's rule unconstitutional, Jones should have named the System as a party.  Because he did not, his request for declaratory relief is fatally flawed and the Court should decline to address it.

---

[10] The text of Rule 4.71 is attached to this brief as Ex. 42, p. 1. Appx. at 784.

**(b)**     **Jones lacks standing to challenge the constitutionality of Texas State University system Rule 4.71 because he cannot show either that a declaration will remedy any past wrong, that he is suffering any present harm, or that he is likely to suffer any future harm as a result of any unconstitutional application of Rule 4.71.**

Even if the indispensable parties are all present, Jones' request still fails because he lacks standing. The Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" in any "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201. The Fifth Circuit interprets the §2201 "case of actual controversy" requirement to be coterminous with Article III's "case or controversy" requirement. *See Lawson v. Callahan,* 111 F.3d 403, 405 (5th Cir.1997); *Texas v. West Publ'g Co.,* 882 F.2d 171, 175 (5th Cir.1989). Thus, if a plaintiff does not satisfy the requirement, the district court is without jurisdiction to hear the case.

To have Article III standing, a plaintiff must meet three required elements:

(1) that the plaintiff have suffered an "injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent"; (2) that there is "a causal connection between the injury and the conduct complained of"; and (3) that the injury is likely to be redressed by a favorable decision.

*Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n,* 274 F.3d 924, 929 (5th Cir.2001) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130 (1992)). The burden is on the plaintiff to establish by a preponderance of the evidence the existence of an actual controversy. *See West Publ'g,* 882 F.2d at 175.

"'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *City of Los Angeles v. Lyons,* 461 U.S. 95, 103 S.Ct. 1660, 1665 (1983) (quoting *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669 (1974)). To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future. Similar reasoning has been applied to suits for declaratory judgments. *Ashcroft v. Mattis,* 431 U.S. 171, 97 S.Ct. 1739 (1977); *Golden v. Zwickler,* 394 U.S. 103, 89 S.Ct. 956 (1969).

For the purposes of this argument, ASU does not contest that Jones has alleged that he suffered an injury in fact in the past and that he has alleged facts to establish causation. However, Jones has neither alleged

facts, nor produced any evidence to establish either that he has any continuing harm, that he imminently will suffer harm in the future because of the allegedly unconstitutional rule, or that a declaration from this Court will remedy the past harm and/or prevent further harm in the future.  Accordingly, he lacks standing to bring a declaratory action seeking to declare unconstitutional any rule or regulation in this matter – whether it is a rule promulgated by the Texas State University System or by the actual defendant in this case.

It is undisputed that Jones no longer works for Angelo State University, and is therefore, no longer subject to any of its rules or regulations.  Pl's First Amended Complaint, ¶4.24, p. 12.  Thus, since his final day at ASU, Jones has lived under no threats of adverse unconstitutional actions by attributable to the enforcement of Rule 4.71.[11]  Accordingly, there is no continuing harm to Jones, or any imminent threat of harm conceivably attributable to the enforcement of Rule 4.71 of the Texas State University System.

Furthermore, ASU is no longer a member of the Texas State University System (Appx. at 52); thus, even if Jones were still employed there (or able to obtain reinstatement to his former position), he still would not be subjected to whatever allegedly unconstitutional restrictions Rule 4.71 might hypothetically create. Accordingly beyond the personal satisfaction of having the rule declared unconstitutional, Jones can present no evidence that such a declaration would redress his past injury, much less any speculative future injuries he might dream up.   Accordingly, he lacks standing to assert a declaratory action challenging the constitutionality of Rule 4.71 in the Texas State University System.

**(c)    Jones is not entitled to declarations under the Federal Declaratory Judgment Act that ASU breached a contract, violated a rule/policy/ guideline/etc., violated Jones' constitutional rights, and/or violated federal law because those claims are subsumed by Jones' substantive claims under Title VII, the Texas Labor Code, and breach of contract.**

Finally, the Federal Declaratory Judgment Act does not permit a plaintiff to resolve ultimate questions of law that are addressed by other substantive claims, nor to adjudicate past harms with no

---

[11] In fact, it is undisputed that, since September 1, 2007 (approximately 2 years before Jones left ASU), the university has not been affiliated with the Texas State University System, and thus Regents Rule 4.71 has not governed employee and faculty conduct with respect to speech restrictions in the classroom.

continuing or prospective nature.  The primary purpose of the Declaratory Judgment Act is to "enable persons to obtain a definition of their rights before an actual injury occurred."  *Steffel v. Thompson,* 415 U.S. 452, 478, 94 S.Ct. 1209 (1974).  The purpose is not to usurp the substantive liability determinations that are properly to be made under a separate cause of action such as Title VII or a state law breach of contract action.  Here, Jones's request for declarations stating that ASU violated his rights,[12] discriminated against him, violated its own policies, and breached his contract are all determinations that constitute elements of his substantive claims under Title VII or breach of contract theories.  Accordingly, Jones gains nothing from the addition of a Declaratory Judgment Act claim requesting such declaratory relief.  Moreover, like his request for a declaration concerning Rule 4.71, Jones' other declaratory requests are *retrospective,* not prospective in nature to correct an ongoing harm.  Accordingly, Jones has not alleged facts giving rise to a viable Declaratory Judgment Act claim for the types of declarations he now seeks.  For that reason, the Court should grant ASU's motion for summary judgment and dismiss those claims.

## V.
## CONCLUSION AND PRAYER FOR RELIEF

FOR THE FOREGOING REASONS, Defendant respectfully requests that the Court GRANT Defendant's Motion to Dismiss and Motion for Summary Judgment.  Plaintiff has failed in Counts II and IV to state a claim for which relief may be granted by this Court.  Further, even to the extent Plaintiff has properly pled any claims, there are no genuine issues of material fact from which a neutral fact-finder could conclude that ASU violated any of the statutory provisions upon which Plaintiff has based his claims. Finally, Plaintiff has also failed to comply with statutes of limitations and statutory notice requirements in connection with his Title VII and Texas Religious Freedom Restoration Act claims.  Because Plaintiff either

---

[12]   Arguably, the Court has no jurisdiction to entertain a claim asking for a declaration that ASU violated Jones' constitutional rights.  Under the Fifth Circuit's decision in *Okpalobi v. Foster,* 244 F.3d 405 (5th Cir.2001), claims for equitable relief, including declarations pertaining to unconstitutional conduct of state officials, must be brought in an official capacity against the offending officials with the power to correct the unconstitutional behavior under an *Ex Parte Young* action, not against the state entity itself.  *Id.* at 416-17.  Since Jones did not sue any state officials for declaratory relief in this lawsuit, his request for these declarations is not proper.

has not properly pled his claims or can present no facts establishing a genuine issue of material fact on his claims, ASU is entitled to dismissal and/or summary judgment on all asserted claims. Accordingly, the Court should grant the Defendants' motions and dismiss this lawsuit in its entirety.

Respectfully submitted,

GREG ABBOTT
Texas Attorney General

DANIEL T. HODGE
First Assistant Attorney General

BILL COBB
Deputy Attorney General for Civil Litigation

DAVID C. MATTAX
Director of Defense Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division


s/ Daniel C. Perkins
**DANIEL C. PERKINS**
Attorney-in-Charge
Texas Bar No. 24010301
Assistant Attorney General
Texas Attorney General's Office
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX
dan.perkins@oag.state.tx.us

*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I certify that a copy of the above *Brief in Support of Rule 56 and Rule 12(c) Motions for Summary Judgment and/or Judgment on the Pleadings* was served by the following manner, on the **28th day of January 2009,** upon the following individuals at the listed addresses:

Frank W. Hill
Frank Gilstrap
Michael Y. Kim
HILL GILSTRAP
1400 W Abram St
Arlington , Texas 76013

*ATTORNEYS FOR PLAINTIFF*

☒ Via CM/ECF Email:  mkim@hillgilstrap.com
☐ Via Facsimile (817) 861-4685
☐ Via Regular Mail
☐ Via Certified Mail Return Receipt Requested
☐ Via Overnight Mail or UPS/FedEx

s/ Daniel C. Perkins
**DANIEL C. PERKINS**
Assistant Attorney General
General Litigation Division